## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAM MOOMAW and REGAN MOOMAW, Individually and on behalf of all others similarly situated | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| GEOSNAPSHOT PTY LTD and GEOSNAPSHOT, INC., | ) ) ) |
| Defendants. | |

Case No. 3:23-cv-1321-DWD

## <u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge:**

Plaintiffs Adam Moomaw and Regan Moomaw bring this putative class action, individually and on behalf of all other similarly situated persons, against Defendants GeoSnapShot PTY LTD ("GeoSnapShot") and its subsidiary GeoSnapShot, Inc. ("GeoSnapShot Delaware") (collectively, "Defendants"). Plaintiffs assert claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").[1]

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(2). (Docs. 25 and 26). Plaintiffs oppose the Motion. (Doc. 27). For the reasons set forth herein, Defendant GeoSnapShot PTY LTD's Motion to Dismiss for Lack of Personal Jurisdiction will be **DENIED**. As to Defendant GeoSnapShot Inc., the Court will order limited **jurisdictional discovery**, and

---

[1] Defendants removed this action from the Circuit Court of St. Clair County, Illinois pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

the Motion will be **DENIED WITHOUT PREJUDICE** to being re-filed after the completion of such discovery.

## I. BACKGROUND

### A. Overview

GeoSnapShot created and owns and operates an online photo platform on a globally accessible website: www.geosnapshot.com ("Website"). (Doc. 26-1 ¶ 5). Photographers who register with GeoSnapShot ("Photographers"), thereby agreeing to its Terms of Service, can use the Website to upload (and in some instances, license to Website users) photos they take at events, and Website users can use the Website to search for, view, download (and in some cases, purchase licenses to) the photos. (Doc. 26-1 ¶ 5). For Photographers to be able to upload photos, an "event organizer" (who is not a GeoSnapShot employee) first must create an event on the Website. (Doc. 26-1 ¶ 7).

GeoSnapShot's business model is dependent on its collection and use of the biometrics of the people depicted in its online photo platform. (Doc. 1-2 ¶ 5). GeoSnapShot encourages event participants to find photos of themselves by uploading a "selfie" and allowing its artificial intelligence to compare that photo with the others in its database. (Doc. 1-2 ¶ 5). This can only be done by extracting from each photo data representing the unique geometry of each facial image so that comparisons can be made. (Doc. 1-2 ¶ 5). Under BIPA, "scan[s] of . . . face geometry" are biometrics, 740 ILCS 14/10. Accordingly, Plaintiffs argue, GeoSnapShot cannot collect or use such scans unless it complies with BIPA.

2

In April 2019, GeoSnapShot contracted with Tough Mudder, an endurance event company, to allow Photographers to attend and take photographs of participants in Tough Mudder events. (Doc. 1-2 ¶ 33). On August 24, 2019, Plaintiffs attended the "Tough Mudder Chicago Saturday" event held in Rockford, Illinois. (Doc. 1-2 ¶ 39). Thereafter, Plaintiffs used GeoSnapShot's Website to locate pictures of themselves participating in the event. Plaintiffs "purchased" complimentary licenses to those photographs and downloaded the same, receiving a receipt from GeoSnapShot.

### B. GeoSnapShot

GeoSnapShot is a proprietary limited company under the laws of Australia and is based in Sydney, Australia. (Doc. 1-2 ¶ 10; Doc. 26-1 ¶¶ 2-3). GeoSnapShot does not maintain a place of business in Illinois. (Doc. 26-1 ¶ 3). GeoSnapShot does not employ anyone in Illinois. (Doc. 26-1 ¶ 3). GeoSnapShot does not own, lease, or occupy any property in Illinois, and it does not own any investments in Illinois. (Doc. 26-1 ¶ 3). GeoSnapShot employs seven full-time employees, and none of those employees are based in Illinois. GeoSnapShot's Website is not hosted in Illinois and GeoSnapShot does not process photographs in Illinois. (Doc. 26-1 ¶ 3; Doc. 27 p. 3).

### C. GeoSnapShot Delaware

GeoSnapShot Delaware is wholly owned by GeoSnapShot and is a conduit through which GeoSnapShot conducts business in the United States. (Doc. 1-2 ¶ 12). GeoSnapShot Delaware was incorporated in Delaware on or about January 13, 2023, and

3

has its principal place of business in Denver, Colorado. (Doc. 26-1 ¶ 14). GeoSnapShot Delaware does not maintain a place of business in Illinois; does not employ anyone in Illinois; and does not own or lease any property in Illinois. (Doc. 26-1 ¶ 15). GeoSnapShot Delaware has three employees, and those employees are based in Denver, Colorado. (Doc. 26-1 ¶ 15).

### D. GeoSnapShot Website

Geosnapshot.com is a globally accessible website created and owned and operated by GeoSnapShot. (Doc. 1-2 ¶ 4; Doc. 26-1 ¶ 5). The Website includes an online photo platform that is operated by GeoSnapShot. (Doc. 1-2 ¶ 4; Doc. 26-1 ¶ 5). GeoSnapShot markets its platform to both event organizers and photographers. (Doc. 1-2 ¶ 21).

For Photographers to be able to upload photos to the Website, an event organizer, such as Tough Mudder, must first create an event on the GeoSnapShot website. (Doc. 26-1 ¶¶ 5, 7; Doc. 1-2 ¶ 22). Photographers who attend the event can then upload photos they take at the event to the Website. (Doc. 1-2 ¶¶ 23-25; Doc. 26-1 ¶¶ 5, 7; Doc. 27-1).

### E. GeoSnapShot Terms and Conditions

As a condition to using the Website, Photographers must register with the Website. (Doc. 27-1 pp. 2-4). By registering with the Website, Photographers agree to the Website's terms and conditions. (Doc. 27-1 p. 4). Specifically, photographers agree to the following terms:

### 4.3 Use of the Content and Grant of License

By uploading Media Material to the Site the Seller has accepted these Terms and Conditions and agrees to the following conditions:

4.3.1. The Site and the Company will use your Media Material for the purpose of licensing your Media Material to customers of the Site in such formats as we may, from time to time make available to Customers, including without limiting the generality of the foregoing, via electronic download;

4.3.2. In connection with the foregoing, in addition to the licenses you grant to the Site elsewhere in these Terms and Conditions, you grant to the Site and the Company a non-exclusive, transferable, fully paid, worldwide license (with the right to sublicense) to use, publish, copy, publicly perform, publicly display, reformat, translate, excerpt (in whole or in part) and distribute copies of your Media Material;

4.3.3. The license includes the right for the Site to use screen resolution images and thumbnails of your Media Material for display and promotional purposes on the Site and any third-party sites, and in connection with internet search results, and embeddable codes;

4.3.4. Media Material will be licensed to customers by the Site in accordance with the Site Terms and Conditions in effect at the time.

(Doc. 27-1 pp. 6-7).

### 8.      Usage of the Site

8.1. Sellers may have alternative photography business/brands that they use. The Site supports the sellers right for Sellers to carry on their own photography businesses, however we do not allow you to use the Site services (our event calendar, our business name, our brand, our relationship with other photographers, our relationship with event organizers, or any other Site services) to compete with the Site or any services that the Site provides.

8.2. Many of the events on the Sites calendar of events are non-exclusive, there may be non-GeoSnapShot photographers at the event. If you book onto a GeoSnapShot event you are deemed to be representing GeoSnapShot at that event and you must upload photos to the GeoSnapShot platform for sale. You may not advertise that photos from a

GeoSnapShot event are for sale through any other platform or service other than the Site.

8.3. To upload photos to an event on the GeoSnapShot calendar you must be a registered photographer for that event. The number of photographers who can upload from an event is determined by the event organizer.

8.4. If the event is not on the Sites calendar you can create the event on GeoSnapShot yourself. You can be a seller at that event and request other Sellers (through the GeoSnapShot platform) to attend your event and upload photos for sale if you choose.

8.5. The Site events calendar is for the use of Sellers and is a service provided by the Site for its Sellers and Users. The calendar information is to be used solely by Sellers to register onto and attend events as a GeoSnapShot photographer. The Site calendar should not be used for any other purpose including, but not limited to; finding events to attend as a non-GeoSnapShot photographer. The Site calendar should not be used for any other purpose including, but not limited to; finding events to attend as a non-GeoSnapShot photographer, passing calendar information to a different company, copying, duplicating, linking to, redirecting to or otherwise using the information for any other purpose.

8.6. If you attend a GeoSnapShot event you cannot offer an alternative purchasing option for photos other than the Site. You cannot advertise your own website or other place to purchase the photos from the GeoSnapShot event other than the Site.

8.7. Any photographer who has breached or is deemed by GeoSnapShot to have breached these terms may have their photographer account suspended or terminated immediately at the sole discretion of GeoSnapShot inline with the "Termination" clause.

8.8. Some Events and Event Organizers may require you to have a Working with Children Check (WWCC) or similar document determined by your country or state to prove that you are certified to be working around minors). If you book on to an event that requires a WWC then you must ensure that you have a valid WWCC, that it is up-to-date and present a copy to the event organizer upon arrival at the event.

(Doc. 27-1 pp. 10-11).

Website users, typically individuals who participated in the events, purchase[2] and/or license photos from the events. (Doc. 1-2 ¶ 4; Doc. 26-1 ¶ 5; Doc. 27-1 p. 3).[3] Individuals who purchase or license photos from the Website also agree to the Website's terms and conditions. (Doc. 27-1 p. 8). The following terms and conditions are applicable to individuals who purchase or license photos from the Website ("Buyers"):

**6.     Buyers**

By purchasing Media Material from the Site you have understood, accepted and are bound by all these Terms and Conditions.

For clarity you have also read, understood and accepted all the Terms and Conditions laid out for the Sellers.

Media Material viewed on the site is shown in low resolution. Upon purchase of Media Material you will be given a link to download the full resolution Media material to be sued solely for the purposes outlined in these Terms and Conditions.

You understand that by using the Site you may be exposed to Media material that is offensive, indecent or objectionable.

By purchasing the Media Material you have accepted these Terms and Conditions and agrees [sic] to the following:

6.1.1. By purchasing Media Material you are entering into an agreement with the Seller of the Media Material your purchase of that Media Material gives you a non-transferable, non-resalable, non-exclusive world-wide license to the Media Material;

6.1.2. You may not alter the purchased Media material in any way;

---

[2] When photos are licensed through the Website, GeoSnapShot receives 30% of the proceeds. (Doc. 1-2 ¶ 25).

[3] Initially, photos are only viewable in a lower quality or format to that of the original photo. (Doc. 27-1 p. 3). The original content is only accessible after the buyer successfully purchases or licenses the photos. (Doc. 27-1 p. 3).

6.1.3. That agreement states that the Seller of the Media Material owns the exclusive world-wide copyright and the Media Material.

6.1.4. You do not have the rights nor may you on-license, on-sell, re-sell, alter, modify, share, gift or use the Media material for marketing, promotional or sales purposes. The Media material is [to] be used solely for the personal use and not broadcast, displayed to the public or otherwise consumed by anyone other than you;

6.1.5. No endorsement is given that the actual Media Material is true, correct, valid or otherwise authentic in any way or that the Media Material was taken in the place it is positioned on the map;

6.1.6. You will pay the amount associated with each item purchased via PayPal or other mechanism offered through the Site;

6.1.7. After successful payment you will immediately download the Media material which will be presented as a download link to you. Failure to download the Media Material immediately may result in that Media material no longer being available. Failure to downloaded [sic] immediately will be the sole responsibility of the Buyer and no liability, compensation or damages may be sought from the Company, the Site or the Buyer.

(Doc. 27-1 pp. 8-9).

**F.  GeoSnapShot and Tough Mudder**

In 2019, GeoSnapShot contracted with Tough Mudder for Photographers to attend and take photographs of participants in Tough Mudder events. (Doc. 1-2 ¶ 33). Tough Mudder promotes endurance events where participants attempt 10-to-12-mile-long obstacle courses that feature hazards such as fields of mud and tanks of cold water. (Doc. 1-2 ¶ 34). In an article promoting the partnership between GeoSnapShot and Tough Mudder, GeoSnapShot founder and chief executive Andy Edwards ("Edwards") emphasized that GeoSnapShot's biometric-based Selfie Search feature was central to the

agreement. (Doc. 1-2 ¶ 36). As Edwards stated in the article, because Tough Mudder participants "come out from the muddy depths, face recognition is the only thing that will find photos of them." (Doc. 1-2 ¶ 36). In the same article, Edwards touted that the Tough Mudder partnership would help GeoSnapShot realize "500% growth" in 2019. (Doc. 1-2 ¶ 37). Between August 2019 and December 2022, GeoSnapShot's Website has hosted thousands of photographs from at least ten Tough Mudder events located in Illinois. (Doc. 1-2 ¶¶ 45, 46).

### G. Plaintiffs

On August 24, 2019, Plaintiff's attended the "Tough Mudder Chicago Saturday" event in Rockford, Illinois. (Doc. 1-2 ¶ 39). At the event, photographers took photographs of Plaintiffs and uploaded them to GeoSnapShot. (Doc. 1-2 ¶¶ 41-42). During the upload process, GeoSnapShot extracted facial biometrics from the photographs without the Plaintiff's consent. (Doc. 1-2 ¶¶ 41-42). Regan Moomaw later used the GeoSnapShot website to "purchase" and download complimentary licenses to the photographs and was issued a receipt from GeoSnapShot (Doc. 26-1 ¶ 13, Doc. 27 p. 2). The receipt confirmed that each photograph was from the "Tough Mudder Chicago Saturday" event. (Doc. 27-2).

### II. LEGAL STANDARD

Under Rule 12(b)(2), a court may dismiss a claim for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). A plaintiff need not allege facts about personal jurisdiction in his or her complaint, but in the face of a Rule

12(b)(2) motion, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When a court rules on a Rule 12(b)(2) motion based only on written submissions, a plaintiff need only establish a prima facie case of personal jurisdiction. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Where, as here, a defendant submits an affidavit regarding personal jurisdiction, this Court accepts as true any facts in the affidavit that do not conflict with the complaint or the plaintiff's submissions. *Curry*, 949 F.3d at 393. Further, where a defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Foundation*, 338 F.3d at 783. If the plaintiff "fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true." *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F.Supp.3d 881, 884 (N.D. Ill. 2020).

## III.  DISCUSSION

### A.  Applicable Law

When a federal court sits in diversity,[4] the court exercises personal jurisdiction to the same extent as a state court. *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 n.2 (7th Cir. 2011). The Illinois long-arm statute permits jurisdiction to the same limits as the

---

[4] Defendants have shown that diversity jurisdiction exists under the Class Action Fairness Act because Plaintiffs are citizens of Illinois, GeoSnapShot Delaware is a citizen of Delaware and Colorado, GeoSnapShot is a citizen of Australia, the amount in controversy exceeds $5 million, and plaintiff seeks to represent a class in excess of 100 members. (Doc. 1).

Due Process Clause. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020); 735 ILCS 5/2-209(c). The Due Process Clause allows personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697 (7th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Jurisdiction may be general or specific, *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020), but only specific jurisdiction is in issue here.[5]

Specific jurisdiction is about "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). Specific jurisdiction arises when there is:

> (1) purposeful availment – the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum;
> (2) relatedness – the alleged injury must arise out of or relate to the defendant's forum-related activities; and
> (3) fairness – the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024)

"For purposeful availment, a defendant must have 'certain minimum contacts' with the forum state." *Id.* (quoting *Int'l Shoe Co. v. Wash Off. Of Unemployment Comp. Placement,* 326 U.S. 310, 316 (1945)). "Requiring minimum contacts protects the defendant

---

[5] Plaintiffs only raise arguments as to the presence of specific personal jurisdiction. (Doc. 27).

from the burden of litigating in a distant, inconvenient forum, as well as to prevent states from reaching beyond the limits of their sovereignty." *Id*.

"The defendant's contacts with the state must demonstrate that the defendant purposively availed itself of the laws of that jurisdiction by availing itself of the privilege of doing business in the state or by purposively directing activities at the state." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 619 (7th Cir. 2022). The contacts must create a "substantial connection" with the state and not be the result of "random," "fortuitous" or "attenuated" contacts. *Burger King Co. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Rather, "the 'defendant's conduct and connection with the forum State' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Grp. V. Washington Regional Medical Center*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King*, 471 U.S. at 474). Nonetheless, physical presence in the forum state is not required for the defendant to have sufficient minimum contacts with the forum state. *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022).

The contacts must come from the activity of the defendant, not from the activity of the plaintiff or a third party. *See Purdue Research Found. V. Sanofi-Sunthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003). *See also Walden v. Fiore*, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) ( "[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."); *Curry*, 949 F.3d at 396 ("the relationship among the defendant, the forum, and the litigation must arise out of contacts that the 'defendant *himself*' creates with the

12

forum state.")  (quoting *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174) (emphasis in original). In addition, the "defendant's contacts must be with the forum state, not just with individuals within the state." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 621 (7th Cir. 2022).

The Seventh Circuit has refused "to fashion a special jurisdictional test for Internet-based cases." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398 (7th Cir. 2020) (citation omitted). Specific personal jurisdiction, however, is not established merely because a website is available in the forum. *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 619 (7th Cir. 2022). Rather, the website operator must stand ready and willing to do business with residents of the forum and then knowingly do business with those residents." *Id.* (internal citations and quotations removed).

## B.  GeoSnapShot[6]

### 1.  Purposeful Direction or Purposeful Availment

GeoSnapShot contends the Court cannot assert jurisdiction over it because it has no physical presence in the state and because its Website's transactions are not stored or processed in Illinois. But "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state," *Curry*, 949 F.3d at 398. Rather, establishing minimum contacts sufficient for the exercise of specific personal jurisdiction depends on whether the defendant has "purposefully directed [its] activities" or

---

[6] In evaluating personal jurisdiction, the Court addresses each Defendant separately. *See Purdue Rsch. Found. v. Sanofi-Sunthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) ("[E]ach defendant's contacts with the forum State must be assessed individually.").

"purposely availed itself of the privilege" of conducting business in the forum. In other words, the "inquiry boils down to this: has [GeoSnapShot] purposely exploited the Illinois market?" *be2 LLC v. Ivanov,* 642 F.3d 555, 558 (7th Cir. 2011).

GeoSnapShot contends that it has not purposely exploited the Illinois market because, among other things, it is merely a technology vendor, and any contacts it has with Illinois are random, fortuitous, or attenuated: the result of a third party's conduct and/or a Website user's unilateral conduct. It's true, for specific personal jurisdiction to exist, the contacts must come from the activity of GeoSnapShot, and not from the activity of a plaintiff or third party. *Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003). *See also Walden v. Fiore,* 571 U.S. 277, 285 (2014); *Curry,* 949 F.3d at 396. But this case is distinguishable from other cases involving technology vendors where courts have found specific personal jurisdiction lacking.

For example, GeoSnapShot cites to *Redd v. Amazon Web Servs., Inc.*, 2023 WL 3505264 (N.D. Ill. May 17, 2023) for the proposition that GeoSnapShot, an out-of-state technology vendor, is not subject to personal jurisdiction in Illinois. In *Redd*, the plaintiff filed a putative class action against Amazon Web Services, Inc. ("AWS"), alleging violations of BIPA. AWS provided cloud computing services and was registered to do business in Illinois. AWS marketed and sold a program called "Rekognition" (an image-recognition technology) to businesses and other entities. A third party, Wonolo, Inc. ("Wonolo") ran a mobile application that allowed users to apply for jobs in various industries. Wonolo contracted with AWS to utilize its Rekognition technology on its mobile application. The plaintiff downloaded Wonolo's application to apply for jobs at

several locations in Illinois. Each time she accepted a job through Wonolo, she scanned her image, thereby utilizing the Rekognition technology. The district court dismissed the plaintiff's BIPA claims for lack of personal jurisdiction because, other than registering to do business in Illinois, AWS's only contact with Illinois was providing its facial recognition technology to Wonolo who used it in Illinois.

GeoSnapShot urgers this Court to find that, like AWS, a third-party stands between GeoSnapShot and its contacts with Illinois. But unlike AWS, GeoSnapShot was not merely involved in a one-off transaction with a third party who, without GeoSnapShot's knowledge, utilized GeoSnapShot's technology in Illinois for its own purposes. On the contrary, GeoSnapShot created and operated a self-hosted interactive website and allowed users, including Illinois users, to engage in commerce on that website.[7]

Further, the record reflects that, as the owner and operator of the Website, GeoSnapShot stood "ready and willing" to do business with Illinois residents and then knowingly did business with Illinois residents. NBA Properties, Inc. v. HANWJH, 46 F.4th 614, 619-22 (7th Cir. 2022). *See also* Illinois v. Hemi Grp. LLC, 622 F.3d 754, 758 (7th Cir. 2010). GeoSnapShot contends that there is no basis for concluding that it was "ready and willing" to do business with Illinois residents because (1) Tough Mudder events are held throughout the United States and the United Kingdom; (2) no advertising is directed at Illinois; and (3) GeoSnapShot is not involved in selecting the location of Tough Mudder

---

[7] The fact that GeoSnapShot's website was available in Illinois, standing alone, does not establish specific personal jurisdiction over GeoSnapShot. NBA Properties, Inc. v. HANWJH, 46 F.4th 614, 619 (7th Cir. 2022).

events.[8] GeoSnapShot further contends there is no basis for concluding that GeoSnapShot knowingly did business with Illinois residents because it does not know where photographed individuals reside (Photographers do not provide residential information for individuals pictured in photographs and event participants do not provide residential information when they purchase and/or license photographs from the Website).

But "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 399 (7th Cir. 2020). *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (with a nationwide market, the publisher reasonably should have anticipated that it could be held accountable in the forum state for activities arising from the "substantial number" of sales in the forum state). Here, there is ample evidence supporting a finding that GeoSnapShot reasonably should have foreseen that it would be licensing (and in some cases selling) photographs from its online photo platform to Illinois residents.

First, GeoSnapShot entered into a contract with Tough Mudder to store photographs taken at Tough Mudder events and to make those photographs available to event participants. The location of the events GeoSnapShot hosted on its Website was known to GeoSnapShot. For example, GeoSnapShot's Website hosts over 22,000 photographs from an event identified on the Website as "Tough Mudder Chicago 2022 Saturday." The address for that page is https://geosnapshot.com/e/tough-mudder-

---

[8] GeoSnapShot also contends it had no control over the Photographers attending Tough Mudder events. The Court addresses this contention below.

chicago-2022-saturday/16028. (Doc. 1-2 ¶ 46 & n.8). Second, GeoSnapShot admits that it "operates" an "online photo platform" (Doc. 26-1), and that Website users can license photographs from that platform. This includes thousands of photographs taken at Illinois events. In the instant case, GeoSnapShot provided Plaintiffs with a license for photographs taken at an Illinois event, and after Plaintiffs licensed the photographs, GeoSnapShot issued a receipt identifying each photograph as "Tough Mudder Chicago Saturday." (Doc. 27-2).

These contacts are not "random," "fortuitous," or "attenuated." They are the result of decisions made by GeoSnapShot, including: the decision to enter into a contract with Tough Mudder, an entity that GeoSnapShot knew held events nationally, including in Illinois; the decision to operate a website that hosts thousands of photographs from Illinois events; and the decision to license and/or sell photographs taken at Illinois events to Website users. As such, even assuming GeoSnapShot did not specifically direct advertising at Illinois and did not know each Website user's address, GeoSnapShot "reasonably could foresee" that it would be transacting business with Illinois residents. *Curry*, 949 F.3d at 399–400. *See also* NBA Properties, Inc. v. HANWJH, 46 F.4th 614, 625 (7th Cir. 2022) (specific personal jurisdiction present where website operator "structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them.). In other words, GeoSnapShot purposely exploited the Illinois market in a way that it should have reasonably foreseen its technology being used by,

and its photographs being licensed to, Illinois residents.[9] If GeoSnapShot did not want to do business with Illinois residents, it could have removed Illinois events from its Website. See *Illinois v. Hemi Grp. LLC,* 622 F.3d 754, 758 (7th Cir. 2010).

GeoSnapShot further contends that because it did not charge Website users to license Tough Mudder photographs, it did not purposefully avail itself of the privilege of conducting business in Illinois. GeoSnapShot's argument requires an overly narrow view of what it means to "conduct business" in Illinois. GeoSnapShot does not deny that its partnership with Tough Mudder was expected to help GeoSnapShot realize 500% growth in 2019. Thus, the aim of GeoSnapShot's partnership with Tough Mudder was not necessarily to generate revenue from licensing photographs, but to increase the company's market share by gaining users (users who might eventually become paying customers). And for reasons already discussed, it was reasonably foreseeable that some those users would be Illinois residents. As such, by licensing and distributing photographs of events taken at Tough Mudder events located in Illinois, GeoSnapShot purposely availed itself of the privilege of conducting business in Illinois.

One final matter warrants the Court's consideration – the relationship between GeoSnapShot and the Photographers.[10] Plaintiffs contend that, because GeoSnapShot had

---

[9] The fact that GeoSnapShot did not physically ship a product to Illinois is immaterial. As argued by Plaintiffs, license agreements are contracts, and contracts "that are substantially connected to Illinois" are contacts sufficient to support personal jurisdiction. See *McDonald's Corp. v. Bukele,* 960 F. Supp. 1311, 1316 (N.D. Ill. 1997). *See also uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421 (7th Cir. 2010) (specific personal jurisdiction established as to defendant who registered domain names to Illinois residents).

[10] Plaintiffs presume that Illinois agency law controls whether there is an agency relationship between GeoSnapShot and the Photographers. It is not clear that Illinois' choice-of-law rules necessarily point to the application of Illinois law on this issue. Regardless, Defendants do not dispute the application of Illinois

the right to control the Photographers, the purposeful-direction inquiry is satisfied by the Photographers physical presence in Illinois while taking photographs at Tough Mudder events. The Court agrees.

The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc., v. Lubrication Techs.*, 148 F.3d 742, 745 (7th Cir. 1998) (applying Illinois law). The parties must consent to a principal-agent relationship, which may be created by conduct or contract. *Id.*

Here, GeoSnapShot's Terms of Service demonstrate that (1) GeoSnapShot exercises control over the "manner and method" in which Photographers conduct their work;[11] (2) Photographers affect the legal relationships of GeoSnapShot when they upload photographs to its Website;[12] and (3) GeoSnapShot identifies Photographers as

---

law. As such, a choice of law analysis is unnecessary. *Wood v. Mid–Valley Inc.,* 942 F.2d 425, 427 (7th Cir.1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."). Further, in Illinois, as in most states, an agency relationship exists where the agent agrees to act on behalf of the principal and the agent is subject to the principal's control. Restatement (Third) of Agency § 1.01 (2006).Thus, as to this commonly applied principal of agency law, there is unlikely to be a true conflict between Illinois law and the law of another state. *See* e.g., *NECA-IBEW Rockford Local Union 364 Health and Welfare Fund v. A & A Drug Co.,* 736 F.3d 1054, 1058 (7th Cir. 2013) (noting that "the federal common law of agency, Illinois agency law, and the Restatement of Agency are all in accord on general agency principles, thereby obviating choice-of-law concerns).

[11] Photographers who "book onto a GeoSnapShot event" "must upload photos to the GeoSnapShot platform for sale" and cannot sell or advertise the photos through any other platform. Similarly, GeoSnapShot prohibits photographers from using the "Site services" (which GeoSnapShot says include its "event calendar," "business name," and "relationship with event organizers") for their own benefit.

[12] Photographers who upload to the Website "Media Material," including photos, "grant to the Site and [GeoSnapShot] a non-exclusive, transferrable, fully paid, worldwide license . . . to use, publish, copy,

being representatives of GeoSnapShot.[13] Thus, GeoSnapShot's Terms of Service support a finding that the Photographers are acting as GeoSnapShot's agents when they photograph events in Illinois.[14] *See* e.g., *Blockmon v. McClellan*, 143 N.E.3d 279, 289–92 (Ill. App. Ct. 2019) (evidence showing that principal "had the right to control whether sales representatives could make sales over the internet" and "had control over whether . . . sales representatives could use business cards with [the alleged principal's] names" supported finding of agency relationship); *Grillo v. Yeager Constr.*, 900 N.E.2d 1249, 1264 (Ill. App. Ct. 2008) (An alleged principal's identification of a person as its "representative" supports a finding that person was its agent). Thus, the Photographers' physical presence in Illinois can be attributed to GeoSnapShot, establishing purposeful availment. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.").

---

publicly perform, publicly display, reformat, translate, excerpt . . . and distribute copies of your Media Material." (Doc. 27-1 § 4.3.2).

[13] The Terms of Service state that photographers who "book onto a GeoSnapShot event . . . are deemed to be representing GeoSnapShot at that event."

[14] GeoSnapShot's Terms of Service state that Sellers "are not considered or classified as employees, agents, representatives, independent contractors, dependent contractors, sub-contractors, licensees, franchises or any other form of employee of the Site or the Company." (Doc. 27-1 § 10). But, when determining whether an agency relationship exists, "the declaration of the parties is not controlling where the conduct of the parties demonstrates the existence of an agency relationship." *McNerney v. Allamuradov*, 84 N.E.3d 437, 454 (Ill. App. Ct. 2017). Additionally, as argued by Plaintiffs, GeoSnapShot's disclaimer of any legal relationship with Photographers is particularly questionable given that Photographers agree that they are "representing GeoSnapShot" at any event they "book onto." (Doc. 27-1 § 8.2).

### 2.   Arise Out of or Relate to the Forum Contacts

The Court next addresses whether Plaintiffs' BIPA claims arise out of or relate to GeoSnapShot's forum-related activities. A "defendant's minimum contacts with the forum state [must] be suit-related." *Curry*, 949 F.3d at 400 (internal quotation marks and citation omitted). But a strict causal connection between the defendant's in-state activity and the plaintiff's suit is not required. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). In the instant case, GeoSnapShot's forum related contacts include exploiting the Illinois market by operating an online photo platform for Tough Mudder events, including events located in Illinois; licensing photographs to individuals who participated in Tough Mudder events located in Illinois; and physical presence at Illinois events attributable to GeoSnapShot by virtue of its relationship with the Photographers who upload photographs to the Website. Plaintiffs' lawsuit is about GeoSnapShot improperly extracting their biometrics from photographs that were uploaded to its Website. GeoSnapShot was only able to extract that data because of the contacts described above. As such, there is a substantial connection between GeoSnapShot's forum contacts and the Plaintiffs' alleged injury. *See* e.g., *Dzananovic v. Bumple, Inc.*, 2023 WL 4405833, at * 6 (N.D. Ill. July 7, 2023) (BIPA suit alleging defendants used their facial recognition technology to collect plaintiff's biometric information while he used the photo verification feature on online dating application substantially connected to defendants' marketing activity and exploitation of Illinois market); *Kukovec v. Estee Lauder Cos., Inc.*, 2022 WL 16744196, at *1 (N.D. Ill. Nov. 7, 2022) (BIPA suit – which alleged that the defendant's optional makeup try-on tool on its website collected plaintiff's facial-

geometry data – related to the defendant's sale of cosmetics in Illinois because the virtual try-on tool was part of the defendant's sales and marketing of its cosmetics).

### 3. Fair play and substantial justice

The exercise of specific jurisdiction should not "offend the traditional notions of fair play and substantial justice". *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). If sufficient contacts to the forum state are shown, then the defendant must make a "compelling" case that jurisdiction would be unfair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). GeoSnapShot has not addressed whether exercising specific jurisdiction would be unfair, focusing instead on whether minimum contacts exist, and the Court finds no factors that militate against exercising personal jurisdiction. Indeed, where, as here, a defendant "structure[s] its [online conduct] so that it can easily serve [Illinois] consumers," and "h[olds] itself [out] as conducting business nationwide," there is nothing unduly burdensome about subjecting it to suit in Illinois. *Curry*, 949 F.3d at 402. Further, Illinois has an interest in providing a forum for its residents, such as Plaintiffs and other class members, to seek redress for the collection of their biometric information in violation of BIPA, an Illinois statute.

### C. GeoSnapShot Delaware

Defendants contend that, because GeoSnapShot Delaware was not formed until January 13, 2023, it did not have contact with Illinois during the period in question and must therefore be dismissed for lack of personal jurisdiction.[15] Plaintiffs, however, allege

---

[15] The Tough Mudder event from which the claim arose occurred on August 24, 2019. (Doc. 1-2 ¶ 39.). Plaintiffs allege that ten other Tough Mudder events occurred in Illinois between August 24, 2019 and December 4, 2022. (*Id.* ¶ 45.).

that GeoSnapShot Delaware "is wholly owned, directly or indirectly, by GeoSnapShot Pty Ltd, and is a conduit through which GeoSnapShot Pty Ltd conducts business in the United States." (Doc. 1-2 ¶ 12). Because Defendants do not refute GeoSnapShot Delaware's alleged role in assisting GeoSnapShot in conducting business in the United States, Plaintiffs contend they are entitled to jurisdictional discovery.

District courts have discretion to authorize limited discovery into jurisdictional issues. *See In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022). However, "[a] plaintiff must be able to establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Id*. Meeting this standard is not particularly onerous; courts typically allow jurisdictional discovery if the plaintiff can show an ambiguity exists or that some jurisdictional facts are unclear. *JT's Frames, Inc. v. Casares*, 2018 WL 835225, at *3 (N.D. Ill. Feb. 13, 2018).

The Court finds that the alleged corporate relationship between the Defendants, warrants further exploration. Without jurisdictional discovery, Plaintiffs cannot reasonably be expected to offer contrary evidence of Defendants' corporate structure or operations in the United States during the relevant time. Accordingly, the Motion to Dismiss Defendant GeoSnapShot Delaware will be **DENIED WITHOUT PREJUDICE** pending limited jurisdictional discovery, at the conclusion of which, GeoSnapShot Delaware may re-file its motion.

## IV. CONCLUSION

For the reasons set forth herein, Defendant GeoSnapShot PTY LTD's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 26) is **DENIED**. As to Defendant

GeoSnapShot Inc., the Court finds that limited jurisdictional discovery is warranted. Accordingly, the Motion for Leave to Dismiss for Lack of Personal Jurisdiction as to Defendant GeoSnapShot Inc. is **DENIED WITHOUT PREJUDICE** to being re-filed after the completion of such discovery. With regard to Defendant GeoSnapShot Inc. and jurisdictional discovery, the Court sets the following schedule:

1) Jurisdictional discovery as to Defendant GeoSnapShot Inc. shall be completed by June 5, 2024.

2) GeoSnapShot Inc.'s renewed motion to dismiss for lack of personal jurisdiction, if any, shall be filed by June 12, 2024.

   **SO ORDERED.**

   Dated: March 7, 2024

s/*David W. Dugan*
DAVID W. DUGAN
United States District Judge
