IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ADAM MOOMAW, REGAN MOOMAW, and
SARAH GUSTAFSON, individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.

GEOSNAPSHOT PTY LTD, an Australian
proprietary limited company,

        Defendant.

Case No. 3:23-cv-01321-DWD

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Adam Moomaw, Regan Moomaw, and Sarah Gustafson, individually, and on behalf of all others similarly situated ("Plaintiffs"), by and through their undersigned attorneys, bring this First Amended Class Action Complaint against Defendant GeoSnapShot Pty Ltd ("GeoSnapShot") under Rule 23 of the Federal Rules of Civil Procedure. In support of this First Amended Class Action Complaint, Plaintiffs state and allege as follows:

## NATURE OF THE CASE

1. This is a class action for damages arising from GeoSnapShot's violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et. seq*. ("BIPA"). GeoSnapShot has violated BIPA by illegally collecting, storing, and using Plaintiffs' biometric identifiers and biometric information ("biometrics") without informed written consent, and are understood to have done the same to countless other similarly situated individuals.

2. The Illinois legislature has recognized that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics,

however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric facilitated transactions." *Id.*

3.     In response to these concerns, the legislature enacted BIPA, which provides that a private entity may not obtain or possess a person's biometrics unless it: (1) informs that person in writing that biometrics will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometrics are being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometrics; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying the biometrics it collects or stores. Furthermore, BIPA prohibits private entities from profiting in any way from a person's biometrics.

4.     GeoSnapShot is an online platform that allows registered photographers to attend events, upload their photos to the GeoSnapShot website, and receive a commission (shared with GeoSnapShot) on the photos that are sold through the website.

5.     GeoSnapShot's business model is dependent on its collection and use of the biometrics of the people depicted in the photos uploaded to its website. GeoSnapShot encourages event participants to find photos of themselves by uploading a "selfie" and allowing its artificial intelligence to compare that photo with the others in its database. This can be done only by extracting from each photo data representing the unique geometry of each facial image so that comparisons can be made. Under BIPA, "scan[s] of . . . face geometry" are biometrics, 740 ILCS 14/10, so GeoSnapShot cannot collect or use them unless BIPA is complied with.

6.     Yet, as described further in this First Amended Complaint, GeoSnapShot does not comply with BIPA. It has collected, stored, used, and profited from the biometrics of hundreds or

thousands of Illinois citizens, many of whom never purposefully involved themselves with GeoSnapShot or had any idea that it was collecting their biometrics.

7.    Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") to recovery the statutory damages that BIPA authorizes for its violations.

## PARTIES AND RELATED ENTITIES

8.    Plaintiff Adam Moomaw is, and at all times relevant to this action was, a resident citizen of Illinois.

9.    Plaintiff Regan Moomaw is, and at all times relevant to this action was, a resident citizen of Illinois.

10.    Plaintiff Sarah Gustafson is, and at all times relevant to this action was, a resident citizen of Illinois.

11.    Defendant GeoSnapShot is an Australian proprietary limited company based in Sydney, New South Wales, Australia. It may be served under the terms of The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, November 15, 1965.

12.    Upon information and belief, GeoSnapShot maintains a U.S. subsidiary known as GeoSnapShot, Inc., a Delaware corporation. GeoSnapShot may use GeoSnapShot, Inc., as a conduit for its operations within the United States, including within Illinois.

## JURISDICTION AND VENUE

13.    This Court has personal jurisdiction over GeoSnapShot under 735 ILCS 5/2-209(a)(1) and (7) because GeoSnapShot, by itself or through agents, has transacted business in this State and made or performed contracts or promises substantially connected with this state as described throughout this First Amended Complaint.

14.     This action was filed originally in the Circuit Court of St. Clair County, Illinois, where venue was proper under 735 ILCS 5/2-101 because the defendants were all nonresidents of this State. On removal, venue is proper in this Court under 28 U.S.C. § 1441(a) because this is the United States district court for the district in which the action was pending at the time of removal.

## FACTS COMMON TO ALL COUNTS

### *BIPA Regulates the Use of Illinois Citizens' Biometrics*

15.     In 2008, the Illinois legislature enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

16.     BIPA Section 15(a) provides that

[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

17.     Under BIPA Section 15(b), it is unlawful for a private entity to

collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

(1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used: and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

18.    And under BIPA Section 15(c), "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

19.    As described throughout this First Amended Complaint, GeoSnapShot violated all three prongs of BIPA Section 15(b) by collecting, storing, and using biometrics without informed written consent. GeoSnapShot also violated BIPA Section 15(a) by failing to provide or comply with a publicly-available written policy regarding its schedule and guidelines for retaining and permanently destroying biometrics. Finally, GeoSnapShot violated BIPA Section 15(c) by using biometrics to enable its "Selfie Search" feature that facilitates the sale of photographs through its website, and thereby provides GeoSnapShot's primary source of revenue.

***GeoSnapShot Profits from the Unauthorized Use of Biometrics***

20.    GeoSnapShot calls itself "a purpose-built photography platform that makes the distribution of event photos simple for any size event."[1] The GeoSnapShot platform is available on the internet at https://geosnapshot.com/. According to GeoSnapShot, its platform has been used for over 24,000 events including over 6.7 million participants in 144 countries.[2]

21.    GeoSnapShot markets its platform both to event organizers and photographers.

22.    Event organizers can register their event with GeoSnapShot and invite their own photographers or request photographers through GeoSnapShot.

---

[1] http://help.geosnapshot.com/en/articles/1729545-faq-s-for-event-organisers

[2] https://geosnapshot.com/event_organisers

23.     Similarly, photographers "rang[ing] from amateurs to full professionals"[3] can register with GeoSnapShot and find events that are seeking photographers.

24.     Photographers who register with GeoSnapShot must agree to certain terms and conditions. These include:

    a.     agreeing not to "use the [GeoSnapShot] Site services . . . to compete with the Site or any services that the Site provides";

    b.     agreeing that if they "book onto a GeoSnapShot event," they "are deemed to be representing GeoSnapShot at that event" and "must upload photos to the GeoSnapShot platform for sale";

    c.     agreeing that if they "attend a GeoSnapShot event [they] cannot offer an alternative purchasing option for photos other than the [GeoSnapShot] Site."

25.     After the event has occurred, photographers upload their photos to the GeoSnapShot website where they are made available for sale. For each photo sold, the photographer receives 70% of the proceeds and GeoSnapShot keeps the remaining 30%.[4] Upon information and belief, the commission that GeoSnapShot takes on photographs sold through its platform is its primary (if not only) source of revenue.

26.     GeoSnapShot facilitates the sale of photographs through its platform by collecting and storing the biometrics of every single person who is in a photograph uploaded to its website—even those people who never use GeoSnapShot or even become aware of its existence.

---

[3] http://help.geosnapshot.com/en/articles/1729545-faq-s-for-event-organisers

[4] http://help.geosnapshot.com/en/articles/1679835-faqs-for-photographers

27.      GeoSnapShot encourages event attendees to do a "Selfie Search" by "upload[ing] a selfie" and allowing its "AI [artificial intelligence] [to] find all their photos quickly and easily."[5]



28.      As stated in GeoSnapShot's Privacy Policy,[6] the Selfie Search feature works through "Face Analysis" and "Face Recognition." "Face Analysis is a process by which the facial features fromphotos [sic] provided to the [geosnapshot.com website] can be analysed." "Face Recognition is an optional feature where a photo provided by a user (a 'selfie') can be compared to the face analysis of photos stored. The results can display the photos the are [sic] a likeness of the selfie."

29.      GeoSnapShot's Selfie Search feature is made possible only through GeoSnapShot's collection and storage of biometrics.

---

[5] https://web.archive.org/web/20230322214222/https://geosnapshot.com/event_organisers

[6] All references to the Privacy Policy are to that version having an effective date of March 5, 2021.

30.    As defined under BIPA, biometrics include "scan[s] of . . . face geometry." 740 ILCS 14/10.

31.    Upon information and belief, GeoSnapShot scans all photographs that photographers upload to its website and extracts data representing the unique geometry of each facial image in each photograph. GeoSnapShot does this even though the people photographed may never have asked to use GeoSnapShot or been informed that photos taken of them will be uploaded to GeoSnapShot.

32.    Upon information and belief, when a person uses GeoSnapShot's Selfie Search feature, GeoSnapShot scans the photograph the user uploads, extracts data representing the unique geometry of the facial image, and compares that data to the data extracted from the event photographs that photographers have uploaded to its website. Through that process, GeoSnapShot identifies photographs that may contain the person whose selfie was uploaded.

33.    Upon information and belief, at some time after Plaintiffs Regan and Adam Moomaw filed their initial Complaint in this action in March 2023, GeoSnapShot modified its website so that the Selfie Search feature is not available for events held in Illinois.

***GeoSnapShot Contracted to Collect Biometrics from Participants in Illinois Events***

34.    In or around April 2019, GeoSnapShot contracted with endurance event company Tough Mudder for GeoSnapShot-registered photographers to attend and take photographs of participants in Tough Mudder events.

35.    Tough Mudder promotes endurance events in which participants attempt 10-to-12-mile-long obstacle courses that feature hazards such as fields of mud and tanks of cold water.

36.    Upon information and belief, under the terms of the agreement, all Tough Mudder events are open to GeoSnapShot-affiliated photographers to take photographs of participants and

upload them to the GeoSnapShot website. GeoSnapShot then derives biometrics from the photographs to enable the Selfie Search feature as described in paragraphs 26 through 32.

37.    In an article promoting the partnership, GeoSnapShot founder and chief executive Andy Edwards emphasized that GeoSnapShot's biometric-based Selfie Search feature was central to the agreement. Because Tough Mudder participants "come out from the muddy depths," the article quoted Edwards as saying, "face recognition is the only thing that will find photos of them."

38.    In the same article, Edwards touted the Tougher Mudder partnership as one that would help GeoSnapShot realize "500% growth" in 2019.

39.    As described further below, Tough Mudder events frequently are held in Illinois and are attended by Illinois citizens. Therefore, through its agreement with Tough Mudder, GeoSnapShot purposefully availed itself of the benefits of operating its business in Illinois and marketing to Illinois citizens the photographs sold through its platform.

***GeoSnapShot Collected, Used, and Profited From Plaintiffs' Biometrics Without Their Consent***

**Plaintiffs Adam and Regan Moomaw**

40.    Plaintiffs Adam and Regan Moomaw attended the "Tough Mudder Chicago Saturday" event held in Rockford, Illinois, on August 24, 2019.

41.    During the event, one or more photographs containing the Moomaws' facial images were taken and subsequently were uploaded to the GeoSnapShot website.

42.    Upon information and belief, after the photographs containing the Moomaws' facial image were uploaded to GeoSnapShot's website, GeoSnapShot scanned them and extracted data representing the unique geometry of the Moomaws' facial images, as is its usual practice.

43.     The Moomaws were never informed that GeoSnapShot would collect, store, or use their biometrics in the form of data representing the unique geometry of their facial images.

44.     The Moomaws were never informed that GeoSnapShot would profit from the use of their biometrics by using them to enable the Selfie Search feature that facilitates the sale of photographs through the GeoSnapShot website, and in turn generates GeoSnapShot's primary source of revenue.

45.     The Moomaws never gave GeoSnapShot consent to collect, store, use, or profit from their biometrics.

**Plaintiff Sarah Gustafson**

46.     Plaintiff Sarah Gustafson attended Tough Mudder events held in Rockford, Illinois, in 2019, 2021, and 2022.

47.     During the events, one or more photographs containing Gustafson's facial image were taken and subsequently were uploaded to the GeoSnapShot website.

48.     Upon information and belief, after the photographs containing Gustafson's facial image were uploaded to GeoSnapShot's website, GeoSnapShot scanned them and extracted data representing the unique geometry of Gustafson's facial images, as is its usual practice.

49.     Gustafson was never informed that GeoSnapShot would collect, store, or use her biometrics in the form of data representing the unique geometry of her facial images.

50.     Gustafson was never informed that GeoSnapShot would profit from the use of her biometrics by using them to enable the Selfie Search feature that facilitates the sale of photographs through the GeoSnapShot website, and in turn generates GeoSnapShot's primary source of revenue.

51.    Gustafson never gave GeoSnapShot consent to collect, store, use, or profit from

her biometrics.

***GeoSnapShot Has Collected, Used, and Profited From the Biometrics of Countless Other
Illinois Citizens***

52.    The GeoSnapShot website hosts photographs taken at no fewer than ten events

held in Illinois since 2019, including at least seven Tough Mudder events. These events include

(with dates and locations indicated parenthetically):

      a.    Chicago Cross Cup 2022 (Dec. 4, 2022; Chicago, Illinois);

      b.    Tough Mudder Chicago 2022 Sunday (Aug. 28, 2022; Rockford, Illinois);

      c.    Tough Mudder Chicago 2022 Saturday (Aug. 27, 2022; Rockford,
          Illinois);

      d.    Terrain Race Chicago (Aug. 13, 2022; Ottawa, Illinois);

      e.    Bubble Run Chicago (July 9, 2022; Chicago, Illinois);

      f.    Muddy Dash Chicago (May 28, 2022; Chicago, Illinois);

      g.    Tough Mudder Chicago Sunday (Aug. 15, 2021; Rockford, Illinois);

      h.    Tough Mudder Chicago Saturday (Aug. 14, 2021; Rockford, Illinois);

      i.    Toughest Mudder Chicago (Aug. 14, 2021; Rockford, Illinois);

      j.    Tough Mudder Chicago Sunday (Aug. 25, 2019; Rockford, Illinois);

      k.    Tough Mudder Chicago Saturday (Aug. 24, 2019; Rockford, Illinois).

53.    For each of those Illinois-located events, the GeoSnapShot website hosts

hundreds, or even thousands of photographs. For example, the page for the Tough Mudder

Chicago Saturday event held in 2019 contains five photo sets that together, contain over 41,000

photographs.[7] Likewise, the page for the Tough Mudder Chicago 2022 Saturday event contains five photo sets that together, contain over 22,000 photographs.[8]

54.    Upon information and belief, the individuals depicted in the photographs taken at those Illinois-located events include a significant number of Illinois citizens.

55.    Upon information and belief, GeoSnapShot has collected the biometrics (in the form of data representing the unique geometry of facial images) of every person whose facial image is contained in every photograph uploaded to its website, including every photograph associated with the Illinois-located events mentioned in paragraph 45 above.

56.    Upon information and belief, GeoSnapShot collects, stores, uses, and profits from those biometrics in the same manner as it has done with Plaintiffs' biometrics.

57.    Upon information and belief, GeoSnapShot has derived revenue or profits from the sale of photographs of Illinois citizens taken at Illinois-located events, and benefits from its commercial relationship with photographers based in Illinois and events held in Illinois.

58.    Upon information and belief, GeoSnapShot's collection, storage, use, and profit from those biometrics all have been done without the subject's informed written consent.

***GeoSnapShot's Collection and Use of Biometrics Violates BIPA***

59.    GeoSnapShot's practices of collecting, storing, using, and profiting from Illinois' citizens biometrics violates BIPA Sections 15(a), (b)(1)–(3), and (c).

60.    **BIPA Section 15(a).** GeoSnapShot possesses biometrics, but does not make available to the public a written policy that establishes a retention schedule and guidelines ensuring that the biometrics it collects are destroyed when the initial purpose for collecting them

---

[7] https://geosnapshot.com/e/tough-mudder-chicago-saturday/9399

[8] https://geosnapshot.com/e/tough-mudder-chicago-2022-saturday/16028

has been satisfied or within three years of the individual's last interaction with GeoSnapShot, whichever comes first. Indeed, the biometrics that GeoSnapShot collects and stores include those of individuals who never knowingly interact with GeoSnapShot. GeoSnapShot therefore violates BIPA Section 15(a).

61. **BIPA Section 15(b)(1).** GeoSnapShot collects, captures, or otherwise obtains biometrics without first informing the subject (or the subject's legally authorized representative) in writing that biometrics are being collected or stored. GeoSnapShot therefore violates BIPA Section 15(b)(1).

62. **BIPA Section 15(b)(2).** GeoSnapShot collects, captures, or otherwise obtains biometrics without first informing the subject (or the subject's legally authorized representative) in writing of the specific purpose and length of term for which the biometrics are being collected, stored, or used. GeoSnapShot therefore violates BIPA Section 15(b)(2).

63. **BIPA Section 15(b)(3).** GeoSnapShot collects, captures, or otherwise obtains biometrics without first receiving from the subject (or the subject's legally authorized representative) an executed written release. GeoSnapShot therefore violates BIPA Section 15(b)(3).

64. **BIPA Section 15(c).** GeoSnapShot profits from the biometrics that it possesses by using them to enable the Selfie Search feature that facilitates the sale of photographs through the GeoSnapShot website, and in turn generates GeoSnapShot's primary source of revenue. GeoSnapShot therefore violates BIPA Section 15(b)(3).

## CLASS ALLEGATIONS

65. This action is brought under Rule 23 by the named Plaintiffs on their own behalf and on behalf of a proposed Class of all other persons similarly situated, defined as follows:

All Illinois citizens who biometric information or biometric identifiers were collected, captured, purchased, received through trade, or otherwise obtained by GeoSnapShot Pty Ltd.

66.     The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members presently is unknown to Plaintiffs, it is ascertainable by appropriate discovery or is known or available to GeoSnapShot. Upon information and belief, the class includes thousands of members.

67.     Common questions of law or fact arising from GeoSnapShot's conduct exist as to all members of the Class. These common questions include, without limitation:

    a.    Whether GeoSnapShot captured, collected, stored or used the biometrics of Plaintiffs or the Class members.

    b.    Whether GeoSnapShot informed Plaintiffs or the Class members in writing that their biometrics were being captured, collected, stored, or used.

    c.    Whether GeoSnapShot informed in writing Plaintiffs or the Class members of the specific purpose and length of term for which their biometrics were being captured, collected, stored, or used.

    d.    Whether GeoSnapShot received from Plaintiffs, the Class members, or their legally authorized representative an executed written release before GeoSnapShot captured, collected, stored, or used their biometrics.

    e.    Whether GeoSnapShot developed and made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying biometrics at the earlier of the time when the initial purpose for collecting or obtaining the biometrics was satisfied or within three years of an individual's last interaction with GeoSnapShot.

    f.    Whether GeoSnapShot profited from Plaintiffs' or the Class members' biometrics by using them to enable the Selfie Search feature that facilitates the sale of photographs through the GeoSnapShot website, and in turn generates revenue for GeoSnapShot.

68.     Class treatment provides a fair and efficient method for the adjudication of the controversy described in this First Amended Complaint because the controversy affects a large number of persons. Class treatment therefore provides an appropriate and effective method for

Plaintiffs and Class members to assert their claims in a manner that can fairly be managed without unnecessary expense or duplication. The expense and burden of individual litigating the claims of each Class member is impracticable and would waste judicial resources.

69.     Furthermore, class treatment allows litigation of claims that, given the expenses of litigation, likely would be insufficient in monetary value to support separate actions. Class treatment allows litigation to be conducted in a single forum, which aids judicial economy and efficiency, promotes parity among the claims of individual Class members, and results in judicial consistency.

70.     In contrast, the prosecution of separate actions by individual members of the Class would create a risk of:

   a.     inconsistent or varying adjudications with respect to individual members of the Class; and

   b.     adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interest.

71.     Plaintiffs will fairly and adequately protect the interests of the Class that they represent. Plaintiffs' interests as the Class representatives are consistent with those of the Class members.

72.     Plaintiffs are represented by counsel experienced in class action and other complex litigation.

73.     Plaintiffs and their counsel envision no difficulties in managing this case as a class action.

## COUNT I – VIOLATION OF BIPA SECTION 15(a)
### 740 ILCS 14/15(a)
### Failure to Develop and Comply with Publicly-Available Policy
### (On Behalf of Plaintiffs and the Class)

74.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

75.     BIPA Section 15(a) requires private entities in possession of biometrics to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

76.     GeoSnapShot is a "private entity" as defined in BIPA Section 10 [740 ILCS 14/10] in that GeoSnapShot Pty Ltd is an Australian proprietary limited company that is not a State or local government agency.

77.     GeoSnapShot possesses the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

78.     GeoSnapShot never has developed or complied with a publicly-available written policy that satisfies the requirements of BIPA Section 15(a).

79.     GeoSnapShot's possession of Plaintiffs' and the Class members' biometrics developing and complying with a publicly-available written policy that satisfies the requirements of BIPA Section 15(a) violates BIPA Section 15(a).

80.     Plaintiffs and the Class members are aggrieved by GeoSnapShot's possession of their biometrics without having developed a publicly-available written policy that satisfies the requirements of BIPA Section 15(a).

81.     As a direct result of GeoSnapShot's violations of BIPA Section 15(a), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

**COUNT II – VIOLATION OF BIPA SECTION 15(b)(1)**
**740 ILCS 14/15(b)(1)**
**Failure to Inform of Collection or Storage**
**(On Behalf of Plaintiffs and the Class)**

82.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

83.     BIPA Section 15(b)(1) makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored." 740 ILCS 14/15(b)(1).

84.     GeoSnapShot is a "private entity" as defined in BIPA Section 10 [740 ILCS 14/10] in that GeoSnapShot Pty Ltd is an Australian proprietary limited company that is not a State or local government agency.

85.     GeoSnapShot collected and stores the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

86.     GeoSnapShot collected the biometrics of Plaintiffs and the Class members without first informing in writing Plaintiffs or the Class members that their biometrics were being collected or stored.

87.     GeoSnapShot's collection and storage of Plaintiffs' and the Class members' biometrics without first informing them in writing violates BIPA Section 15(b)(1).

88.     Plaintiffs and the Class members are aggrieved by GeoSnapShot's collection and storage of their biometrics without having first informed them in writing as required under BIPA Section 15(b)(1).

89.     As a direct result of GeoSnapShot's violations of BIPA Section 15(b)(1), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

## COUNT III – VIOLATION OF BIPA SECTION 15(b)(2)
### 740 ILCS 14/15(b)(2)
### Failure to Inform of Purpose and Length of Term
### (On Behalf of Plaintiffs and the Class)

90.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

91.     BIPA Section 15(b)(2) makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: . . . (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(2).

92.     GeoSnapShot is a "private entity" as defined in BIPA Section 10 [740 ILCS 14/10] in that GeoSnapShot Pty Ltd is an Australian proprietary limited company that is not a State or local government agency.

93.     GeoSnapShot collected and stores and uses the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

94.     GeoSnapShot collected, and stores and uses, the biometrics of Plaintiffs and the Class members without first informing in writing Plaintiffs or the Class members of the specific purpose and length of term for which their biometrics were being collected, stored, or used.

95.     GeoSnapShot's collection, storage, and use of Plaintiffs' and the Class members' biometrics without first informing them in writing of the specific purpose and length of term for which their biometrics were being collected, stored, or used violates BIPA Section 15(b)(2).

96.     Plaintiffs and the Class members are aggrieved by GeoSnapShot's collection, storage, and use of their biometrics without having first informed them in writing of the specific purpose and length of term for which their biometrics were being collected, stored, or used as required under BIPA Section 15(b)(2).

97.     As a direct result of GeoSnapShot's violations of BIPA Section 15(b)(2), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

## COUNT IV – VIOLATION OF BIPA SECTION 15(b)(3)
### 740 ILCS 14/15(b)(3)
### Failure to Obtain Written Release
### (On Behalf of Plaintiffs and the Class)

98.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

99.     BIPA Section 15(b)(3) makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: . . . (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 740 ILCS 14/15(b)(3).

100.     GeoSnapShot is a "private entity" as defined in BIPA Section 10 [740 ILCS 14/10] in that GeoSnapShot Pty Ltd is an Australian proprietary limited company that is not a State or local government agency.

101.     GeoSnapShot collected the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

102.    GeoSnapShot collected the biometrics of Plaintiffs and the Class members without first having obtained a written release executed by them or their authorized legal representative.

103.    GeoSnapShot's collection of Plaintiffs' and the Class members' biometrics without first having obtained an executed written release violates BIPA Section 15(b)(3).

104.    Plaintiffs and the Class members are aggrieved by GeoSnapShot's collection of their biometrics without first having obtained an executed written release as required under BIPA Section 15(b)(3).

105.    As a direct result of GeoSnapShot's violations of BIPA Section 15(b)(3), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

## COUNT V – VIOLATION OF BIPA SECTION 15(c)
### 740 ILCS 14/15(c)
### Profiting From Biometrics
### (On Behalf of Plaintiffs and the Class)

106.    Plaintiffs incorporate all preceding allegations as if fully set forth herein.

107.    BIPA Section 15(c) makes it unlawful for any private entity to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.740 ILCS 14/15(c).

108.    GeoSnapShot is a "private entity" as defined in BIPA Section 10 [740 ILCS 14/10] in that GeoSnapShot Pty Ltd is an Australian proprietary limited company that is not a State or local government agency.

109.    GeoSnapShot possesses the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

110.    GeoSnapShot profits from the biometrics of Plaintiffs and the Class members by using them to enable the Selfie Search feature that facilitates the sale of photographs through the GeoSnapShot website, and in turn generates GeoSnapShot's primary source of revenue.

111.    GeoSnapShot's practice of profiting from Plaintiffs' and the Class members' biometrics violates BIPA Section 15(c).

112.    Plaintiffs and the Class members are aggrieved by GeoSnapShot's practice of profiting from their biometrics in violation of BIPA Section 15(c).

113.    As a direct result of GeoSnapShot's violations of BIPA Section 15(c), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of the proposed Class, respectfully requests the following relief with respect to each and every count alleged above:

A.    certification of this action as a class action under Rule 23 and appointment of the undersigned as class counsel;

B.    a declaration that GeoSnapShot's conduct described throughout this First Amended Complaint violates BIPA Sections 15(a), (b)(1)–(3), and (c);

C.    injunctive and equitable relief as is necessary to protect Plaintiffs and the proposed Class from GeoSnapShot's ongoing violations of BIPA Sections 15(a), (b)(1)–(3), and (c);

D.    statutory damages in the amount of $5,000.00 for each and every intentional or reckless violation of BIPA, as allowed under BIPA Section 20(2), and statutory damages in the

amount of $1,000.00 for each and every negligent violation of BIPA, as allowed under BIPA Section 20(1);

      E.    their reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as allowed under BIPA Section 20(3) or other applicable law;

      F.    such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the proposed Class, respectfully request a jury trial on all issues so triable.

Dated: July 9, 2024                  Respectfully submitted,

                            **THE DRISCOLL FIRM, P.C.**

                        By:      /s/ Matthew J. Limoli
                                Matthew J. Limoli, #6328051
                                301 Fayetteville Street, Ste. 1825
                                Raleigh, North Carolina 27601
                                Phone: (919) 582-6516
                                Fax: (314) 932-3233
                                matthew@thedriscollfirm.com

                                **THE DRISCOLL FIRM, LLC**
                                John J. Driscoll, #6276464
                                1311 Avenida Juan Ponce de Leon, Ste. 501
                                San Juan, Puerto Rico 00907
                                Phone: (314) 222-2605
                                Fax: (314) 932-3233
                                john@jjlegal.com

                                *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 9, 2024, the foregoing document was electronically filed with the Clerk of Court and will be served by operation of the Court's CM/ECF system upon all registered parties.

                              /s/ Matthew J. Limoli