## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ADAM MOOMAW, REGAN MOOMAW, and SARAH GUSTAFSON Individually and on behalf of all others similarly situated** | ) ) ) ) | |
| | ) | **Case No. 3:23-cv-1321-DWD** |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) ) | |
| **GEOSNAPSHOT PTY LTD, an Australian proprietary limited company** | | |
| **Defendants.** | | |

## <u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge:**

Plaintiffs Adam Moomaw, Regan Moomaw, and Sarah Gustafson, bring this putative class action, individually and on behalf of all other similarly situated persons, against Defendant GeoSnapShot PTY LTD ("GeoSnap" or "GeoSnapShot"), asserting claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").[1] Presently before the Court is GeoSnap's Motion for Reconsideration (Doc. 63) of the Court's Order Denying its Motion to Dismiss for Lack of Personal Jurisdiction ("Original PJ Order"). (Doc. 38).[2]

---

[1] Defendants removed this action from the Circuit Court of St. Clair County, Illinois pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

[2] On April 12, 2024, GeoSnap and former defendant GeoSnapShot Inc. moved to reconsider the Court's Order denying its Motion to Dismiss or, alternatively, to Modify the Order to Make it Appealable. Thereafter, Plaintiff filed a First Amended Complaint. The First Amended Complaint dropped GeoSnapShot Inc as a defendant and added Sarah Gustafson as a plaintiff. (Doc. 58). As a result, the Court denied the initial motion to reconsider as moot. (Doc. 59). The Court then granted GeoSnap's motion

## I.     JURISDICTIONAL FACTS

### A. Overview

GeoSnap created and owns and operates an online photo platform on a globally accessible website: www.GeoSnap.com ("Website"). (Doc. 26-1 ¶ 5). Photographers who register with GeoSnap ("Photographers") can use the Website to upload photos they take at events (and in some instances, license to Website users). (Doc. 26-1 ¶ 5).  Website users can use the Website to search for, view, download (and in some cases, purchase licenses to) the photos. (Doc. 26-1 ¶ 5).

GeoSnap's business model is dependent on its collection and use of the biometrics of the people depicted in its online photo platform. (Doc. 58 ¶ 5). GeoSnap encourages event participants to find photos of themselves by uploading a "selfie" and allowing its artificial intelligence to compare that photo with the others in its database. (Doc. 58 ¶ 5). This can only be done by extracting from each photo data representing the unique geometry of each facial image so that comparisons can be made. (Doc. 58 ¶ 5). Under BIPA, "scan[s] of . . . face geometry" are biometrics, 740 ILCS 14/10. Accordingly, Plaintiffs argue, GeoSnap cannot collect or use such scans unless it complies with BIPA.

In April 2019, GeoSnap contracted with Tough Mudder, an endurance event company, to allow Photographers to attend and take photographs of participants in

---

seeking an extension of time to respond to the Amended Complaint to allow GeoSnap to provide time to investigate the additional plaintiff's claims. (Docs. 60 and 61). On August 21, 2024, GeoSnap filed the instant motion indicating that Gustafson's claims are substantially similar to those raised by the original plaintiffs and do not impact the personal jurisdiction arguments previously raised.

Tough Mudder events. (Doc. 58 ¶ 34). On August 24, 2019, Plaintiffs Adam and Regan Moomaw attended the "Tough Mudder Chicago Saturday" event held in Rockford, Illinois. (Doc. 58 ¶ 40). Plaintiff Sarah Gustafson attended Tough Mudder events held in Rockford Illinois, in 2019, 2021, and 2022. (Doc. 58 ¶ 46). Thereafter, Plaintiffs used GeoSnap's Website to locate pictures of themselves participating in the event. Plaintiffs "purchased" complimentary licenses to those photographs and downloaded the same, receiving a receipt from GeoSnap.

### B. GeoSnap

GeoSnap is a proprietary limited company under the laws of Australia and is based in Sydney, Australia. (Doc. 58 ¶ 10; Doc. 26-1 ¶¶ 2-3). GeoSnap does not maintain a place of business in Illinois. (Doc. 26-1 ¶ 3). GeoSnap does not employ anyone in Illinois. (Doc. 26-1 ¶ 3). GeoSnap does not own, lease, or occupy any property in Illinois, and it does not own any investments in Illinois. (Doc. 26-1 ¶ 3). GeoSnap employs seven full-time employees, and none of those employees are based in Illinois. GeoSnap's Website is not hosted in Illinois and GeoSnap does not process photographs in Illinois. (Doc. 26-1 ¶ 3; Doc. 27 p. 3).

### C. GeoSnap Website

GeoSnap.com is a globally accessible website created and owned and operated by GeoSnap. (Doc. 26-1 ¶ 5). The Website includes an online photo platform that is operated

by GeoSnap. (Doc. 58 ¶ 4; Doc. 26-1 ¶ 5). GeoSnap markets its platform to both event
organizers and photographers. (Doc. 58 ¶ 21).

### D. Photographers[3]

Photographers must register to use the Website. (Doc. 27-1 §§ 3, 4.1). Once
registered, Photographers may utilize GeoSnap's Website services which include
"[GeoSnap's] event calendar, [GeoSnap's] business name, [GeoSnap's] relationship with
event organizers," and "other Site services." (Doc. 27-1, §§ 8.1, 8.3). Additionally, once
registered, Photographers may upload photos to the Website. (Doc. 27-1 § 8.3). For
Photographers to be able to upload photos, an "event organizer" (who is not a GeoSnap
employee) first must create an event on the Website. (Doc. 26-1 ¶ 7). Alternatively, if an
event has not been created, Photographers may create the event themselves and invite
other Photographers to attend the event. (Doc. 27-1, pg. 10 § 8.4).

Photographers agree to GeoSnap's Terms and Conditions by (1) registering for the
Website (Doc. 27-1 § 4.1.5); (2) accessing the Website, using the Website, or using any
services available on the Website; (Doc. 27-1, § 1); (3) uploading  photos to the Website
(Doc. 27-1 § § 4.2.10, 4.3); and (4) selling photos on the Website (Doc. 27-1 §§ 1, 4).  The
Terms and Conditions also state that Photographers must read, understand, and agree to
the Terms and Conditions before selling photos on or using the Website. (Doc. 27-1, pg.
2).

---

[3] GeoSnap's Terms and Conditions also refer to Photographers as "Sellers." (Doc. 27-1).

E.  **GeoSnap Terms and Conditions**

Pursuant to the Terms and Conditions, photographers agree to the following:

**4.3 Use of the Content and Grant of License**

By uploading Media Material to the Site the Seller has accepted these Terms and Conditions and agrees to the following conditions:

4.3.1. The Site and the Company will use your Media Material for the purpose of licensing your Media Material to customers of the Site in such formats as we may, from time to time make available to Customers, including without limiting the generality of the foregoing, via electronic download;

4.3.2. In connection with the foregoing, in addition to the licenses you grant to the Site elsewhere in these Terms and Conditions, you grant to the Site and the Company a non-exclusive, transferable, fully paid, worldwide license (with the right to sublicense) to use, publish, copy, publicly perform, publicly display, reformat, translate, excerpt (in whole or in part) and distribute copies of your Media Material;

4.3.3. The license includes the right for the Site to use screen resolution images and thumbnails of your Media Material for display and promotional purposes on the Site and any third-party sites, and in connection with internet search results, and embeddable codes;

4.3.4. Media Material will be licensed to customers by the Site in accordance with the Site Terms and Conditions in effect at the time.

(Doc. 27-1 pp. 6-7).

8.    **Usage of the Site**

8.1. Sellers may have alternative photography business/brands that they use. The Site supports the sellers right for Sellers to carry on their own photography businesses, however we do not allow you to use the Site services (our event calendar, our business name, our brand, our relationship with other photographers, our relationship with event organizers, or any other Site services) to compete with the Site or any services that the Site provides.

8.2. Many of the events on the Sites calendar of events are non-exclusive, there may be non-GeoSnap photographers at the event. If you book onto a GeoSnap event you are deemed to be representing GeoSnap at that event and you must upload photos to the GeoSnap platform for sale. You may not advertise that photos from a GeoSnap event are for sale through any other platform or service other than the Site.

8.3. To upload photos to an event on the GeoSnap calendar you must be a registered photographer for that event. The number of photographers who can upload from an event is determined by the event organizer.

8.4. If the event is not on the Sites calendar you can create the event on GeoSnap yourself. You can be a seller at that event and request other Sellers (through the GeoSnap platform) to attend your event and upload photos for sale if you choose.

8.5. The Site events calendar is for the use of Sellers and is a service provided by the Site for its Sellers and Users. The calendar information is to be used solely by Sellers to register onto and attend events as a GeoSnap photographer. The Site calendar should not be used for any other purpose including, but not limited to; finding events to attend as a non-GeoSnap photographer. The Site calendar should not be used for any other purpose including, but not limited to; finding events to attend as a non-GeoSnap photographer, passing calendar information to a different company, copying, duplicating, linking to, redirecting to or otherwise using the information for any other purpose.

8.6. If you attend a GeoSnap event you cannot offer an alternative purchasing option for photos other than the Site. You cannot advertise your own website or other place to purchase the photos from the GeoSnap event other than the Site.

8.7. Any photographer who has breached or is deemed by GeoSnap to have breached these terms may have their photographer account suspended or terminated immediately at the sole discretion of GeoSnap inline with the "Termination" clause.

8.8. Some Events and Event Organizers may require you to have a Working with Children Check (WWCC) or similar document determined by your country or state to prove that you are certified to be working around minors). If you book on to an event that requires a WWC then you must ensure that you have a valid WWCC, that it is up-to-date and present a copy to the event organizer upon arrival at the event.

(Doc. 27-1 pp. 10-11).

Website users, typically individuals who participated in the events, purchase[4] and/or license photos from the events. (Doc. 58 ¶ 4; Doc. 26-1 ¶ 5; Doc. 27-1 p. 3).[5] Individuals who purchase or license photos from the Website also agree to the Website's terms and conditions. (Doc. 27-1 p. 8). The following terms and conditions are applicable to individuals who purchase or license photos from the Website ("Buyers"):

### 6.    Buyers

By purchasing Media Material from the Site you have understood, accepted and are bound by all these Terms and Conditions.

For clarity you have also read, understood and accepted all the Terms and Conditions laid out for the Sellers.

Media Material viewed on the site is shown in low resolution. Upon purchase of Media Material you will be given a link to download the full resolution Media material to be sued solely for the purposes outlined in these Terms and Conditions.

You understand that by using the Site you may be exposed to Media material that is offensive, indecent or objectionable.

By purchasing the Media Material you have accepted these Terms and Conditions and agrees [sic] to the following:

6.1.1. By purchasing Media Material you are entering into an agreement with the Seller of the Media Material your purchase of that Media Material gives you a non-transferable, non-resalable, non-exclusive world-wide license to the Media Material;

6.1.2. You may not alter the purchased Media material in any way;

---

[4] When photos are licensed through the Website, GeoSnap receives 30% of the proceeds. (Doc. 58 ¶ 25).

[5] Initially, photos are only viewable in a lower quality or format to that of the original photo. (Doc. 27-1 p. 3). The original content is only accessible after the buyer successfully purchases or licenses the photos. (Doc. 27-1 p. 3).

6.1.3. That agreement states that the Seller of the Media Material owns the exclusive world-wide copyright and the Media Material.

6.1.4. You do not have the rights nor may you on-license, on-sell, re-sell, alter, modify, share, gift or use the Media material for marketing, promotional or sales purposes. The Media material is [to] be used solely for the personal use and not broadcast, displayed to the public or otherwise consumed by anyone other than you;

6.1.5. No endorsement is given that the actual Media Material is true, correct, valid or otherwise authentic in any way or that the Media Material was taken in the place it is positioned on the map;

6.1.6. You will pay the amount associated with each item purchased via PayPal or other mechanism offered through the Site;

6.1.7. After successful payment you will immediately download the Media material which will be presented as a download link to you. Failure to download the Media Material immediately may result in that Media material no longer being available. Failure to downloaded [sic] immediately will be the sole responsibility of the Buyer and no liability, compensation or damages may be sought from the Company, the Site or the Buyer.

(Doc. 27-1 pp. 8-9).

## F. GeoSnap and Tough Mudder

In 2019, GeoSnap contracted with Tough Mudder for Photographers to attend and take photographs of participants in Tough Mudder events. (Doc. 58 ¶ 34). Tough Mudder promotes endurance events where participants attempt 10-to-12-mile-long obstacle courses that feature hazards such as fields of mud and tanks of cold water. (Doc. 58 ¶ 35). In an article promoting the partnership between GeoSnap and Tough Mudder, GeoSnap founder and chief executive Andy Edwards ("Edwards") emphasized that GeoSnap's biometric-based Selfie Search feature was central to the agreement. (Doc. 58 ¶ 37). As

Edwards stated in the article, because Tough Mudder participants "come out from the muddy depths, face recognition is the only thing that will find photos of them." (Doc. 58 ¶ 37). In the same article, Edwards touted that the Tough Mudder partnership would help GeoSnap realize "500% growth" in 2019. (Doc. 58 ¶ 38). Between August 2019 and December 2022, GeoSnap's Website has hosted thousands of photographs from at least eleven Tough Mudder events located in Illinois. (Doc. 58 ¶¶ 52, 53).

**G. Plaintiffs**

On August 24, 2019, Plaintiffs Adam and Regan Moomaw attended the "Tough Mudder Chicago Saturday" event held in Rockford, Illinois. (Doc. 58 ¶ 40). At the event, photographers took photographs of Plaintiffs and uploaded them to GeoSnap. (Doc. 58 ¶¶ 42-43). During the upload process, GeoSnap extracted facial biometrics from the photographs. (Doc. 58 ¶¶ 41-42). The Moomaws were never informed that GeoSnap would collect, store, or use their biometrics in the form of data representing the unique geometry of their facial images or that GeoSnap would profit from the use of their biometrics by using them to enable the Selfie Search feature that facilitates the sale of photographs through the Website. (Doc. 58 ¶¶ 43-44). Regan Moomaw later used the GeoSnap website to "purchase" and download complimentary licenses to the photographs and was issued a receipt from GeoSnap (Doc. 26-1 ¶ 13, Doc. 27 p. 2). The receipt confirmed that each photograph was from the "Tough Mudder Chicago Saturday" event. (Doc. 27-2).

9

Plaintiff Sarah Gustafson attended Tough Mudder events held in Rockford, Illinois, in 2019, 2021, and 2022. (Doc. 58, pg. 10). During the events, one or more photographs containing Gustafson's facial image were taken and subsequently uploaded to the GeoSnap website. (*Id*.). Gustafson was never informed that GeoSnap would collect, store, or use their biometrics in the form of data representing the unique geometry of their facial images or that GeoSnap would profit from the use of their biometrics by using them to enable the Selfie Search feature that facilitates the sale of photographs through the Website. (Doc. 58 ¶¶ 49-50).

## II.    Personal Jurisdiction Order

On March 7, 2024, this Court found that it has personal jurisdiction over GeoSnap. (Doc. 38). The Court found, in pertinent part, specific jurisdiction exists because GeoSnap's Website structured its commercial activity to invite business from Illinois. Further, as the owner and operator of such a Website, GeoSnap stood "ready and willing" to do business with Illinois residents and then knowingly did business with Illinois residents. The Court also found ample evidence demonstrating that GeoSnap reasonably should have foreseen that it would be licensing, and in some cases selling, photographs from its online photo platform to Illinois residents such as the Plaintiffs.

The Court rejected the contention that GeoSnap is merely a technology vendor and that any contacts it has with Illinois are the result of a third party's conduct and/or a Website user's unilateral conduct. In so holding, the Court noted that, unlike the cases relied on by GeoSnap, GeoSnap "was not merely involved in a one-off transaction with a third party who, without GeoSnap's knowledge, utilized GeoSnap's technology in Illinois

for its own purposes." (Doc. 38, pg. 15). Instead, "GeoSnap created and operated a self-hosted interactive website and allowed users, including Illinois users, to engage in commerce on that website. (*Id*.). The Court also found GeoSnap's contacts with Illinois were the result of decisions made by GeoSnap, and that the contacts demonstrated GeoSnap "purposely exploited the Illinois market in a way that it should have reasonably foreseen its technology being used by, and its photographs being licensed to, Illinois residents." (Doc. 38, pgs. 17-18).

The Court also considered the relationship between GeoSnap and Photographers attending Tough Mudder events as a basis for personal jurisdiction. The Court found that GeoSnap's Terms and Conditions demonstrate the Photographers were acting as GeoSnap's agents when they photographed events in Illinois and that the Photographers' physical presence in Illinois was attributable to GeoSnap. (Doc. 38, pg. 20). Accordingly, the Court explained, the relationship between GeoSnap and the Photographers provided an alternative basis for establishing purposeful availment.

## III.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 54(b)

A court may reconsider an interlocutory order under Federal Rule of Civil Procedure 54(b). The Rule provides that any order that does not resolve all claims as to all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Motions for reconsideration serve a limited function and are only granted where "the court has patently misunderstood a party or has made a decision outside the adversarial issues

presented to the Court by the parties or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id.*

The purpose of allowing motions to reconsider is not "to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless." *Frietsch v. Refco Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) (refusing to consider argument that a party did not raise until after the court had dismissed the suit). Additionally, reconsideration "is not an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

## B. Personal Jurisdiction

While there are two forms of jurisdiction, only specific jurisdiction is at issue here. "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation and internal quotation marks omitted). Specific jurisdiction "may be condensed to three essential requirements...." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Id.* (citation omitted). Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. *Id.* Third, any exercise of personal

jurisdiction must "comport with traditional notions of fair play and substantial justice." *Id.* (citations omitted). Here, GeoSnap challenges the Court's finding at to the first element – purposeful availment.

## IV.    DISCUSSION

### A. Purposeful Availment

#### 1.    Purposeful Contacts Between GeoSnap and Illinois

GeoSnap contends the Court erred in finding that GeoSnap purposefully directed any activities toward Illinois. In support of this argument, GeoSnap argues the Court's reliance on *NBA Props., Inc. v. Hanwjh*, 46 F.4th 614 (7th Cir. 2022) ("*NBA Properties*") and *Curry v. Revolution Labs., LLC,*, 949 F.3d 385, 399 (7th Cir. 2020) ("*Curry*") was improper because these cases are factually distinguishable from the instant case.

According to GeoSnap, *Curry* is distinguishable because GeoSnap (1) did not ship a physical product to Illinois, (2) had no way of knowing where Tough Mudder events would occur, (3) had no control over where Tough Mudder events would take place, and (4) had no reason to know individuals attending Tough Mudder events in Illinois resided in Illinois. (Doc. 63, pgs. 6-7). GeoSnap raised these arguments in connection with its original motion to dismiss for lack of personal jurisdiction. (Doc. 33, pg. 4, arguing that *Curry* is "easily distinguishable because GeoSnap has no control over where the Tough Mudder events would occur, does not use shipping addresses in Illinois, does not actually deliver any 'product' in Illinois, and does not provide to [sic] a written acknowledgement to any Illinois consumers."). Nonetheless, GeoSnap contends, it is proper to reassert the

same arguments in a motion to reconsider because they were "mistakenly overlooked" by the Court. (Doc. 63, pg. 7).

The Court did not overlook these arguments; they were discussed in the Original PJ Order (Doc. 38, pgs. 14-18), but consideration of additional jurisdictional facts led the Court to conclude that GeoSnap reasonably should have foreseen that it would be licensing (and in some cases selling) photographs from its online photo platform to Illinois residents. (*Id.*). GeoSnap may not now invoke Rule 54(b) to revisit arguments that have been previously raised and rejected. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments...").

GeoSnap's attempt to distinguish *NBA Properties* is also improper in the context of a Rule 54(b) motion. Plaintiffs' response to GeoSnap's original personal jurisdiction motion extensively discussed *NBA Properties*. (Doc. 27, pgs. 11-18). GeoSnap could have presented argument regarding *NBA Properties* in its reply brief but chose not to. GeoSnap cannot now, for the first time in a motion for reconsideration, "raise arguments which could, and should, have been made before [the order being challenged] issued." *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986).

The Court therefore rejects GeoSnap's arguments regarding *Curry* and *NBA Properties* as being improperly raised in a motion to reconsider. That being said, GeoSnap's rehashed arguments regarding *Curry* and belated arguments regarding *NBA Properties* fall flat. As the Court previously explained, "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that

14

the defendant reasonably could foresee that its product would be sold in the forum. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 399 (7th Cir. 2020). Likewise, the claim that GeoSnap did not know each user's address does not defeat personal jurisdiction because, at a minimum, Given GeoSnap's purposeful business activity, it has reason to know that it would be transacting business with individuals in Illinois.

GeoSnap contracted with Tough Mudder, an entity that has a market presence both nationally and world-wide, including in Illinois, to provide its product – the online photo array – to athletes attending Tough Mudder events. GeoSnap held itself out as open for business in Illinois by allowing photographers attending Tough Mudder events, including events in Illinois, to invite attendees to use GeoSnap's Website to license or purchase photographs from GeoSnap's online photo array – in fact, participating photographers were prohibited from distributing event photographs on any other forum. The photographs available on GeoSnap's Website were grouped by the date and location of the Tough Mudder event. For example, GeoSnap's Website hosted over 22,000 photographs from an event identified as "Tough Mudder Chicago 2022 Saturday." When a customer purchases or licenses a photograph hosted on GeoSnap's Website, the receipt specifies the date and location of the event where the photograph was taken. Given these facts, GeoSnap can hardly complain it did not know some of its photographs would be licensed or purchased by Illinois residents. Therefore, it can be said that GeoSnap reasonably anticipated it would be licensing or selling its product to Illinois residents, such that GeoSnap purposefully availed itself of the benefits of doing business in Illinois.

The fact that a physical product was not shipped to Illinois does not alter the Court's analysis. See *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 429 (7th Cir. 2010) (fact that physical product was not shipped to the forum does not defeat personal jurisdiction when contacts are otherwise sufficient). Nor does the fact that GeoSnap did not charge for licensing Tough Mudder photographs. Like the defendant in *Howell v. Bumble, Inc.*, No. 21 CV 6898, 2023 WL 6126492 (N.D. Ill. Sept. 19, 2023), the aim of GeoSnap's partnership with Tough Mudder was not to generate revenue from licensing photographs at Tough Mudder events, but to increase the company's market share by gaining users who might eventually become paying customers. See *Id.* at *9-10 (finding personal jurisdiction even though defendant did not sell or ship products to the forum state and noting that the defendant's goal was to "gain users, preferably those who pay for premium features…" and to "solicit ongoing use" of defendant's dating app).

The Court also is not convinced by the contention that GeoSnap's hosting of over 22,000 photographs from a 2022 Illinois event is irrelevant because the Moomaw's claims arise from an event held in Illinois in 2019. First, this argument was not raised in GeoSnap's original motion to dismiss for lack of personal jurisdiction and has been waived. *See Terese* 396 F.Supp. 3d at 794. Second, the record reflects that the Website hosts photos taken from eleven other Illinois events, including the 2019 event the Moomaws attended. (Doc. 58, ¶ 52). Third, the Seventh Circuit has held that contacts arising after a cause of action accrues are relevant to the personal jurisdiction analysis. See *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 948 n.6 (7th Cir. 1992).

Finally, GeoSnap contends the Court "overlooked" three cases cited in GeoSnap's underlying briefing: (1) *Stein v. Clarifai*, 526 F.Supp.3d 339 (N.D. Ill 2021), *Gutierrez v. Wemagine.ai LLP*, 2022 U.S. Dist. LEXIS 14831 (N.D. Ill. 2022), and *Webber v. Armslist LLC*, 70 F.4th 945 (7th Cir. 2023). But the fact that the Court did not expressly address every single case cited in GeoSnap's initial briefing does not mean those cases were overlooked. The Court was not required to specifically address in its opinion each and every argument asserted by GeoSnap. In denying GeoSnap's motion to dismiss for lack of personal jurisdiction, the Court implicitly rejected GeoSnap's arguments pertaining to these decisions. Moreover, as highlighted in Plaintiffs' briefing, *Stein and Gutierrez* are distinguishable and not controlling. And, *Webber* is inapposite. GeoSnap contends that in *Webber*, the Seventh Circuit held that "designing a website that could be used in the forum state" and "solict[ing] business in that state" is insufficient to create jurisdiction." (Doc. 63, pg. 9). Not so. As noted by Plaintiff, in *Webber* the issue was not whether the defendant's commercial website targeted the forum state, but whether the website's contacts with the forum could be attributed to the website's designer, a natural person sued individually.

In summary, GeoSnap's contacts clearly signal a willingness to do business with Illinois and indicate that GeoSnap reasonably should have anticipated that some of its photographs would be licensed or purchased by Illinois consumers. GeoSnap's arguments on reconsideration are unavailing, and the Court finds sufficient contacts to support an exercise of specific personal jurisdiction over GeoSnap.

**2. Relationship Between GeoSnap and the Photographers**

17

The acts of an agent may be attributed to the principal to establish personal jurisdiction over the principal. *Stein v. Rio Parismina Lodge,* 296 Ill.App.3d 520, 231 Ill.Dec. 1, 695 N.E.2d 518, 522 (1998); *see Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact"). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc., v. Lubrication Techs.*, 148 F.3d 742, 745 (7th Cir. 1998) (applying Illinois law).

GeoSnap contends there is no principal-agent relationship between GeoSnap and Photographers who worked at the Tough Mudder events in Illinois, and that the Court misunderstood or failed to consider GeoSnap's arguments regarding why the Photographers are not GeoSnap agents and/or employees. (Doc. 63, pgs. 10-11). Specifically, GeoSnap reiterates the following: (1) GeoSnap has no part in the selection of Photographers and is not aware of who they are while they work the events; (2) GeoSnap does not control when Photographers show up to the event, how long they stay, how many photographs they take and would not even know who these photographers are until *after* the event is completed; (3) Tough Mudder recruits the Photographers, not GeoSnap; (4) images uploaded to the GeoSnap website are controlled by the Photographers; and (5) Photographers do not have to agree to GeoSnap's Terms and

18

Conditions before an event, but do so when they upload photo to the Website.  (Doc. 63, pg. 12).

The Court, however, did not misunderstand or overlook these arguments. The Court acknowledged, for instance, that GeoSnap's Terms and Conditions attempt to disclaim any legal relationship with Photographers. (Doc. 38, pg. 20 n.14). But, as the Court explained in the challenged order, "when determining whether an agency relationship exists, 'the declaration of the parties is not controlling where the conduct of the parties demonstrates the existence of an agency relationship.' " (*Id*).  (citing *McNerney v. Allamuradov*, 84 N.E.3d 437, 454 (Ill. App. Ct. 2017). The bottom line is, despite GeoSnap's arguments to the contrary, as previously explained by the Court, GeoSnap's Terms and Conditions demonstrate that:

> (1) GeoSnap exercises control over the "manner and method" in which Photographers conduct their work;[6] (2) Photographers affect the legal relationships of GeoSnap when they upload photographs to its Website;[7] and (3) GeoSnap identifies Photographers as being representatives of GeoSnap.[8]

(Doc. 38, pg. 20).

---

[6] Photographers who "book onto a GeoSnap event" "must upload photos to the GeoSnap platform for sale" and cannot sell or advertise the photos through any other platform. Similarly, GeoSnap prohibits photographers from using the "Site services" (which GeoSnap says include its "event calendar," "business name," and "relationship with event organizers") for their own benefit.

[7] Photographers who upload to the Website "Media Material," including photos, "grant to the Site and [GeoSnap] a non-exclusive, transferrable, fully paid, worldwide license . . . to use, publish, copy, publicly perform, publicly display, reformat, translate, excerpt . . . and distribute copies of your Media Material." (Doc. 27-1 § 4.3.2).

[8] The Terms of Service state that photographers who "book onto a GeoSnapShot event . . . are deemed to be representing GeoSnapShot at that event."

Further, a review of GeoSnap's Terms and Conditions in their entirety, does not support the assertion that GeoSnap could not have exercised control over the Photographers because Photographers do not agree to the Terms and Conditions until they upload photos *after* an event. The Court specifically notes the following:

> Before buying or selling items through GeoSnapShot or using the GeoSnapShot website you are required to read, understand and agree to all these Terms and Conditions. You may not use GeoSnapShot and buy or sell items through GeoSnapShot after thoroughly reading, understanding, agreeing, and accepting all of the Terms and Conditions. (Doc. 27-1, pg. 2).

> The Site facilitates the sale of Media Material between the Seller and the Buyer. By accessing the Site, being a User of the Site, or using any services available on the Site you are agreeing to be bound by these Terms and Conditions. If you disagree with any part of the terms then you may not access the Site. (*Id*.) (emphasis added).

> As a condition to using the Site you must:

> 4.1.1. Register with a valid email address and password…(*Id*. at pg. 3).

> By registering for the Site you are agreeing to all of the Terms and Conditions set out within this document and available from the registration page. If you do not agree with the Terms and Conditions do not register for the Site and stop using the site immediately. Use the contact information to ask for your registration details to be removed. (*Id*. at pg. 4).

> 8.1. Sellers may have alternative photography business/brands that they use. The Site supports the sellers right for Sellers to carry on their own photography businesses, however we do not allow you to use the Site services (our event calendar, our business name, our brand, our relationship with other photographers, our relationship with event organizers, or any other Site services) to compete with the Site or any services that the Site provides. (*Id*. at pg. 10).

> 8.2. Many of the events on the Sites calendar of events are non-exclusive, there may be non-GeoSnapShot photographers at that event. If you book

onto a GeoSnapShot event you are deemed to be representing GeoSnapShot at that event and you must upload photos to the GeoSnapShot platform for sale. You may not advertise that photos from a GeoSnapShot event are for sale through any other platform or service other than the Site. (*Id.*).

8.3 To upload photos to an event on the GeoSnapShot calendar you must be a registered photographer for that event. The number of photographers who can upload from an event is determined by the event organizer. (*Id.*).

8.4 If the event is not on the Sites calendar you can create the event on GeoSnapShot yourself. You can be a seller at that event and request other Sellers (through the GeoSnapShot platform) to attend your event and upload photos for sale if you choose. (*Id.*).

8.5. The Site events calendar is for the use of Sellers and is a service provided by the Site for its Sellers and Users. The calendar information is to be used solely by Sellers to register onto and attend events as a GeoSnapShot photographer. The Site calendar should not be used for any other purpose including, but not limited to; finding events to attend as non-GeoSnapShot photographer, passing calendar information to a different company, copying, duplicating, linking to, redirecting to or otherwise using the information for any other purpose. (*Id.*).

8.6. If you attend a GeoSnapShot event you cannot offer an alternative purchasing option for photos other than the Site. You cannot advertise your own website or other place to purchase the photos from the GeoSnapShot event other than the Site. (*Id.*).

8.7. Any photographer who has breached or is deemed by GeoSnapShot to have breached these terms may have their photographer account suspended or terminated immediately at the sole discretion of GeoSnapShot inline with the "Termination" clause. (*Id.*).

8.8. Some Events and Event Organizers may require you to have a Working with Children Check (WWCC) (or similar document determined by your country or state to prove that you are certified to be working around minors). If you book on to an event that requires a WWCC then you must ensure that you have a valid WWCC, that it is up-to-date and present a copy to the event organizer upon arrival at the event. (*Id.* at pgs. 10-11).

These provisions, read together, contradict the assertion that Photographers *only* agree to the Terms and Conditions *after* an event when photographs are uploaded to the

Website. The Terms and Conditions expressly state that, to use the Website, a photographer must register using a valid email address and password, and by registering, that user agrees to GeoSnap's Terms and Conditions. A photographer also agrees to the Terms and Conditions anytime he or she accesses or uses the Website. GeoSnap would have the Court believe that registration and use of the Website only occur after an event is completed at the time a photograph is uploaded. But the Terms and Conditions reveal that uploading photographs following an event is not necessarily the first time a Photographer will access or use the Website. For instance, one of the services provided by the Website is access to GeoSnap's calendar of events. Photographers may access and use the calendar of events to locate upcoming events they would like to attend and "book onto" the event. Thus, there are instances where photographers access and use the Website prior to an event. In those instances, the photographer has agreed to the Terms and Conditions prior to the event, by registering as a user, by accessing and using the Website's calendar of events, and by "booking onto" an event. Considering these provisions, the contention that the relationship between GeoSnap and the Photographers is not formed until after an event falls flat.[9]

### B. In the Alternative, GeoSnap Asks the Court to Modify its Order

Having considered and rejected GeoSnap's arguments seeking reconsideration, the Court moves on to GeoSnap's request for the Court to modify the Original PJ Order.

---

[9] Further, as noted by Plaintiffs, to the extent there is tension between some facts in the record, Plaintiffs are entitled to resolution in their favor. See e.g., *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003) ("In evaluating whether the prima facie standard has been satisfied, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record."

First, GeoSnap contends the Court should modify the Order to allow for an interlocutory appeal. Second, GeoSnap contends the Court should modify the Order to defer ruling on personal jurisdiction pending jurisdictional discovery into GeoSnap's Illinois contacts. The Court addresses each argument in turn.

### 1. Certification for Interlocutory Appeal

GeoSnap contends there are substantial grounds for a difference of opinion as to whether Plaintiffs have established personal jurisdiction and requests a certification of interlocutory order for appeal pursuant to 28 U.S.C. § 1292(b). (Doc. 63). Plaintiffs contend the request should be denied because the Court's ruling was correct and because the Court's ruling does not present a "pure" question of law that can be resolved by interlocutory appeal. (Doc. 64). At the Court's request, the parties have filed additional briefing on this issue. (Docs. 75 and 76). Based on the following, the Court denies the request for certification.

Section 1292(b) states that when a district court judge believes an order for an interlocutory appeal involves (1) a controlling question of law, (2) to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation, then the district judge may certify the request for such an appeal. Thereafter, the Court of Appeals has discretion to permit an appeal from the order "if application is made to it within ten days after the entry of the order." *Id.* If a court does not include a § 1292(b) certification in its original order, it may amend the order to include such a certification. See FED. R. APP. P. 5(a)(3).

GeoSnap, as the party seeking interlocutory review, bears the heavy burden of persuading the Court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers v. Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). The Seventh Circuit has cautioned that § 1292(b) must be used sparingly "lest interlocutory review increase the time and expense required for litigation," *Asher v. Baxter Int'l., Inc.*, 505 F.3d 736, 741 (7th Cir. 2007), and that interlocutory appeals are "frowned on in the federal judicial system," *Sterk v. Redbox Automated Retail*, LLC, 672 F.3d 535, 536 (7th Cir. 2012).

As noted above, to certify an order for interlocutory appeal under § 1292(b) there must be "a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. Of Trs.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). The criteria are "conjunctive, not disjunctive," therefore, the Court should not grant a motion to certify if the movant does not meet its burden as to any one of these criteria. *Id.* at 676.

GeoSnap contends that requirements under § 1292 are met. Specifically, GeoSnap contends that personal jurisdiction is a question of law that has the potential to be dispositive and is therefore a controlling question of law. GeoSnap further contends that, given the facts of this case, whether personal jurisdiction exists is contestable and resolution of the question in GeoSnap's favor could prevent protracted litigation.

Here, the Court's analysis begins and ends with section 1292(b)'s first requirement. To be a "question of law" as used in section 1292(b), the question must be a "pure" question of law, "something the court of appeals could decide quickly and cleanly

without having to study the record," such as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine ..." *Id.* at 676–677. Application of a legal standard is a question of law. *In re Text Messaging Antitrust Litigation,* 630 F.3d at 626. However, the determination here does not involve a pure question of law. Instead, it involves mixed questions of law and fact concerning GeoSnap's conduct and its contacts with Illinois.

GeoSnap insists this case involves a pure question of law because GeoSnap "is arguing that the Court's legal conclusions drawn from the facts in the record were incorrect and contrary to well-established precedent from this Circuit." (Doc. 63, pg. 17). GeoSnap further argues that this Court's opinion is at odds with other district court opinions that "declined personal jurisdiction and are closer to the facts in this case than [the facts in] the cases cited by the Court. GeoSnap's supplemental briefing further details how the *facts* of this case are similar to other cases where personal jurisdiction has been declined and dissimilar to other cases where courts found that the exercise of personal jurisdiction was proper. (Doc. 75).

But these arguments only serve to demonstrate that GeoSnap's alleged question of law is inextricably intertwined with an analysis of the factual allegations in this case. The determination here necessarily requires examination of the facts. Indeed, resolving GeoSnap's initial motion to dismiss and its subsequent motion for reconsideration, required an extensive review of the relevant jurisdictional facts. The same will be true for the Seventh Circuit; determining whether GeoSnap's contacts with Illinois are sufficient to establish personal jurisdiction will necessarily require the Appellate Court to dig

through the record, reviewing facts, Terms and Conditions, and declarations. See e.g., *Shepherd Investments Int'l, Ltd. v. Verizon Commc'ns, Inc.*, No. 03C0703, 2005 WL 1475323, at *2 (E.D. Wisc. June 22, 2005) (finding that review of personal jurisdiction order did not involve an abstract legal issue because the court of appeals would have to "study the record, decide which facts were relevant and measure the facts against a somewhat imprecise legal standard, that of minimum contacts."); *Burton v. American Cyanamid*, Case No. 07-CV-0303, 2016 WL 311286, at *3 (E.D. Wis. Jan. 26, 2016) (finding that "the purposeful availment inquiry requires the application of facts to a legal standard and thus is not a pure question of law.").

Under these circumstances, GeoSnap cannot meet the standard for a "question of law" ripe for appellate review under § 1292. Because *all* four criteria must be satisfied in order to certify an order for immediate appeal under § 1292(b), and at least one is not satisfied, the Court need not address the remaining criteria. *See Ahrenholz*, 219 F.3d at 675.

### 2. Jurisdictional Discovery

In support of its argument for jurisdictional discovery, GeoSnap first contends the Court erred by "prioritize[ing] inferences it drew from GeoSnap's Terms and Conditions over GeoSnap's Declaration." (Doc. 63, pg. 17). But, on a motion to dismiss for lack of personal jurisdiction, district courts must resolve all factual disputes in plaintiff's favor; only unrefuted facts in a defendant's declaration will be taken as true. *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir.2014); *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n. 1 (7th Cir. 2009). Thus, to the extent there is a dispute between GeoSnap's declaration and the Terms and Conditions (the affirmative evidence

supporting the exercise of jurisdiction), the Court properly resolved that dispute in Plaintiff's favor.

Next, GeoSnap criticizes the Court for noting that "the declaration of the parties is not controlling where the conduct of the parties demonstrates the existence of an agency relationship." (Doc. 38, pg. 20 n.14) (citing *McNerney v. Allamuradov,* 84 N.E.3d 437, 454 (Ill. App. Ct. 2017). GeoSnap contends that, at this early stage and without the presence of a counter-declaration, it was improper to rely on this case because *McNerney* was decided on summary judgment on a more fully developed record. GeoSnap misconstrues the Court's Order. The Court's citation to *McNerney* is not intended to refer to a "declaration" under 28 U.S.C. § 1746. Rather, the Court was emphasizing that, if the conduct of the parties demonstrates an agency relationship, the fact that the parties' contract disavowed an agency relationship by "declaring" no such relationship exists is not determinative.

Finally, GeoSnap's citation to *B.D. ex rel. Myer v. Samsung SDI Co.,* 91 F.4th 856, 859 (7th Cir. 2024) for the proposition that the Court erred in denying the motion to dismiss without allowing for jurisdictional discovery is unpersuasive. In *B.D.,* the district court relied primarily on the stream-of-commerce theory to find specific jurisdiction. *Id.* at 862. The Seventh Circuit chose to remand the case for jurisdictional discovery because (1) the parties agreed that the defendant sold some products, but not the product in issue (18650 batteries), directly to the forum (Indiana), and (2) although the record indicated defendant sold 18650 batteries to Indiana consumers through third-party websites and vendors, whether the defendant knew or expected that these third parties would cause

27

the product to enter Indiana was unclear. *Id.* at 863. But the same issue is not present in this case. GeoSnap was not transacting business with users via a third party, and thus there is no question regarding whether GeoSnap knew that a third party would cause its product to enter Illinois. Rather, given GeoSnap's purposeful conduct (as previously described herein), Plaintiff has made a prima facie showing that specific personal jurisdiction exists.

## V.    CONCLUSION

For the reasons set forth herein, Defendant GeoSnap PTY LTD's Motion for Reconsideration or, Alternatively, to Modify the Order to Make it Appealable Pursuant to 28 U.S.C. 1292(b) (Doc. 63) is **DENIED**.

**SO ORDERED.**

Dated: March 6, 2024

DAVID W. DUGAN
United States District Judge